UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

MARTIN HECHT AS ADMINISTRATOR OF          Index No.: _____
THE ESTATE OF DAVID F. GREENBERG,

                              Plaintiff,

      -against-                              **COMPLAINT**

NEW YORK UNIVERSITY and DEMOCRATIC
SOCIALISTS OF AMERICA, INC.,

                              Defendants.
------------------------------------------------------------

      Plaintiff, Martin Hecht as Administrator of The Estate of David F. Greenberg, by and through his attorneys, Schwartz, Conroy & Hack, PC, as and for his Complaint against Defendants New York University and the Democratic Socialists of America, Inc., hereby sets forth the following:

      1.    This is an action to secure the proceeds of three retirement annuity contracts held by David F. Greenberg (hereinafter, "Decedent") as part of his employee pension benefit plan with New York University.

      2.    The Estate of David F. Greenberg (hereinafter, the "Estate"), administered by his nephew, Martin Hecht (hereinafter, "Hecht"), brings this Complaint against New York University (hereinafter, "NYU"), Decedent's former employer, for damages resulting from its breach of its fiduciary duties under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA"), and against the Democratic Socialists of America, Inc. (hereinafter, "DSA"), alleged successor-in-interest to the New American Movement, a now-defunct political organization whom NYU incorrectly proffers as the rightful beneficiary of three of Decedent's four retirement annuity contracts.

1

3. No information could be found that the New American Movement and the DSA observed any legal or other formalities for their alleged merger.

4. Hecht, as duly appointed Administrator of the Estate of David F. Greenberg (hereinafter, "Plaintiff") challenges NYU's determination that the DSA is a proper beneficiary to Decedent's annuity contracts on the grounds that NYU's default to a fifty-year-old document naming the "New American Movement" as contingent beneficiary of Decedent's retirement annuity plan constitutes an unreasonable exercise of discretion in breach of its fiduciary duties under ERISA.

5. Decedent's parents, Louis Greenberg and Mina Greenberg, were named as the primary beneficiaries of the original retirement annuity contract signed by Decedent in 1974. Half a century later, Decedent died on July 12, 2024.

6. Because Decedent's parents predeceased him, NYU seeks to distribute the balance of Decedent's retirement annuity plan to the DSA, as successor-in-interest to the New American Movement.

7. Additionally, Plaintiff seeks to hold NYU accountable for its breaches of fiduciary duty in the handling of the Decedent's investment accounts, and by extension, other similarly situated employees.

**JURISDICTION AND VENUE**

8. Jurisdiction for this civil action arises under 28 U.S.C. § 1331 as a matter involving federal questions pursuant to ERISA's civil enforcement provision codified at 29 U.S.C. § 1132.

9. This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is where the subject retirement plan is administered, where at least one of the alleged breaches took place, and where all Defendants reside.

## THE PARTIES

10. Decedent was a fully vested participant in the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration, EIN 13-5562308, Plan No. 001 (hereinafter, the "Faculty Plan").

11. Decedent resided at 110 Bank St., Apt 6F, New York, NY 10014 until his death on July 12, 2024. A true and accurate copy of Decedent's Certificate of Death is annexed hereto as **Exhibit "A"**.

12. Hecht was appointed the administrator of the Estate of David F. Greenberg by the Surrogates Court of the State of New York, County of New York, on September 26, 2024. A true and accurate copy of the Certificate of Appointment of Administrator is annexed hereto as **Exhibit "B"**.

13. The Estate is domiciled in Manhattan, New York.

14. Hecht is a resident of Illinois with an address at 1306 Sunnyside Avenue, Highland Park, IL 60035.

15. NYU was the plan sponsor and fiduciary under ERISA for the Faculty Plan.

16. Defendant NYU is a non-profit corporation organized under New York law with its principal place of business in New York, New York.

17. Defendant DSA is a non-profit corporation organized under New York law with its principal place of business in New York, New York.

## THE PLAN

18. The Faculty Plan is a defined contribution, individual account, employee pension benefit plan pursuant to 29 U.S.C. § 1002(2)(A) and § 1002(34).

19. The Faculty Plan is established and maintained under a written document in accordance with 29 U.S.C. § 1102(a)(1).

20. The Faculty Plan provides for retirement income for certain employees of NYU. That retirement income depends upon contributions made on behalf of each employee by his or her employer, deferrals of employee compensation and employer matching contributions, and performance of investment options net of fees and expenses.

21. As discussed below, the Faculty Plan was funded by retirement annuity contracts with TIAA-CREF.

22. NYU is the fiduciary responsible for the control, management and administration of the Faculty Plan, in accordance with 29 U.S.C. § 1102(a).

23. NYU is the Plan Administrator under 29 U.S.C. § 1002(16)(A)(i) with exclusive responsibility for the management and administration of the Faculty Plan, with all powers necessary to enable NYU to properly carry out such responsibilities, including the selection and compensation of the providers of administrative services to the Faculty Plan and the selection, monitoring, and removal of the investment options made available to participants for the investment of their contributions and provision of their retirement income.

24. NYU is a fiduciary to the Faculty Plan due to its management and control over the Faculty Plan, its assets and administration. 29 U.S.C. § 1002(21).

**FACTUAL BACKGROUND**

25. Decedent was a professor of sociology at NYU for forty-nine years, from 1973 until his retirement in 2022 at the age of eighty.

26. Decedent retired from NYU in 2022, by which time he was a fully vested participant in the Faculty Plan. Decedent continued to be a participant in the Faculty Plan after retiring from NYU.

27. Decedent passed away on July 12, 2024.

28. At the time of his death and as part of the Faculty Plan, Decedent held four retirement annuity contracts with the Teachers Insurance and Annuity Association of America ("TIAA") and College Retirement Equities Fund ("CREF") (hereinafter, collectively, "TIAA-CREF") through NYU, bearing the following account numbers:

- A6132193/P6132190
- L30977S6/M30977S4
- F1776563/H1776569
- F543FTV4/H543FTV0

(Hereinafter, collectively, the "TIAA Contracts").

### A. Decedent's Stale Beneficiary Designation

29. In addition to the F5 Contract, at the time of his death, Decedent also held three other retirement annuity contracts bearing account numbers: (i) A6132193/P6132190; (ii) L30977S6/M30977S4; and (iii) F1776563/H1776569 (collectively, the "Disputed Contracts").

30. The collective value of the Disputed Contracts as of the date of this filing is approximately $4,765,123.00.

31. The Disputed Contracts designate Decedent's parents, Louis and Mina Greenberg, as primary beneficiaries in equal shares and the "New American Movement" as contingent beneficiary.

32. Louis and Mina Greenberg passed away in 1986 and 2008, respectively. Therefore, the New American Movement is the only remaining beneficiary of the Disputed Contracts.

33. The New American Movement was a political organization established in 1971 by veterans of the New Left movement and in opposition to United States involvement in Vietnam.[1]

34. Following the Vietnam War, in 1982, the New American Movement discontinued its operations and allegedly merged with the Democratic Socialist Organizing Committee to form the DSA.

35. The New American Movement has not existed in its original and true corporate form since 1982.

36. There is no indication that the New American Movement observed legal or other necessary formalities in merging with the DSA.

37. The DSA is not a legal successor-in-interest to the New American Movement.

38. Because neither of the primary beneficiaries of the Disputed Contracts have been alive since 2008, and because the contingent beneficiary of the Disputed Contracts has not existed in its original corporate form since 1982, the designated beneficiaries of the Disputed Contracts— as are currently named— do not reflect Decedent's true intentions.

Decedent's true intention, to designate his Estate as beneficiary of his retirement annuity contracts, is reflected in his most recent beneficiary designation.

**B. Decedent's Intended Beneficiary Designation**

39. On February 25, 1974, Decedent executed his beneficiary designations under retirement annuity contract bearing account number A6132193/P6132190[2] (the "Original

---

[1] Joel Blau Collection of New American Movement Records (1972); https://findingaids.library.nyu.edu/tamwag/tam_051/

[2] Retirement annuity contract A6132193/P6132190 is one of the three "Disputed Contracts."

6

Retirement Annuity Contract"). At this time, Decedent was thirty-one years old and residing in the United States during the height of the Vietnam War.

40. Decedent's 1974 beneficiary designation named his parents, Louis and Mina Greenberg, as the primary beneficiaries under the Original Retirement Annuity Contract, both of whom were then living. Decedent's designation of the New American Movement as contingent beneficiary was made in furtherance of his sincerely held political beliefs, which were closely aligned with the ideological principles and objectives of the New American Movement.

41. Twenty-two years later, on December 4, 1996, Decedent made his most recent beneficiary designation under his Vanguard Section 403(b)(7) Custodial Account (Plan #90789), then-held by Vanguard.

42. Decedent's Vanguard Section 403(b)(7) Custodial Account was transferred to TIAA following NYU's consolidation of its retirement plans with a single recordkeeper in 2018; the proceeds of this account ultimately landed in Decedent's TIAA account bearing number bearing account number F543FTV4/H543FTV0 (hereinafter, the "F5 Contract"). The F5 Contract followed the beneficiary designations made by Decedent in 1996 under his Vanguard plan.

43. The beneficiary designations made by Decedent in 1974 no longer made sense in 1996. One of the primary beneficiaries under the Original Retirement Annuity Contract, Decedent's father, Louis Greenberg, passed away ten years earlier, in 1986. As for the contingent beneficiary under the Original Retirement Annuity Contract, the New American Movement dissolved in or about 1982 following its alleged merger (the legality of which remains contested) with the DSA.

44. Decedent's decision to designate the New American Movement as a beneficiary under his Original Retirement Annuity Contract was due largely in part to the political climate of

7

the day. Decedent was firmly against United States involvement in Vietnam and his decision to designate the New American Movement—as vigorous opponents of the Vietnam War—as a beneficiary was reflective of that belief.

45. However, in 1996, United States involvement in Vietnam was long since over and Decedent's priorities had shifted. At the age of fifty-four, Decedent was focused on family. His two sisters, Arline Tufano and Dena Karzen, each had two sons, making Decedent a loving uncle to four nephews—Richard and Martin Hecht, and Brian and Todd Karzen. By 1996, Richard, Martin, Brian, and Todd were beginning to have children of their own.

46. Motivated by his growing family responsibilities, Decedent was prompted to update his beneficiary designations under his retirement accounts in 1996 in order to, one day, protect and provide for his growing family. Decedent believed that the beneficiary designations he effected in 1996 would apply to all of his retirement accounts, *including the Original Retirement Annuity Contract.*

47. As enumerated above, in paragraph 42, the F5 Contract followed the beneficiary designations made by Decedent in 1996 under his Vanguard plan, designating his sisters, Arline Tufano and Dena Karzen, as primary beneficiaries in equal shares and his Estate as contingent beneficiary. <u>It was Decedent's intention that this beneficiary designation applied to *all* his retirement accounts through NYU.</u>

48. In reality, Decedent's 1996 beneficiary designation was isolated to his Vanguard plan and the F5 Contract held by TIAA-CREF with which it eventually became. Retirement annuity contracts L30977S6/M30977S4 and F1776563/H1776569[3] followed the beneficiary designation under the Original Retirement Annuity Contract.

---

[3] Retirement annuity contracts L30977S6/M30977S4 and F1776563/H1776569 are two of the three "Disputed Contracts."

8

49. It is clear that Decedent was never made aware of the blatant discrepancy among the beneficiary designations under his four retirement contracts held by TIAA-CREF, as he would have promptly taken the necessary steps to correct the improper designations and align the beneficiary designations under all four retirement contracts with those designated under the F5 Contract—i.e., designating his sisters, Arline Tufano and Dena Karzen, as primary beneficiaries in equal shares and his Estate as contingent beneficiary.

50. But for NYU's failure to inform Decedent of the aforementioned discrepancy, the designated beneficiaries of the Disputed Contracts would have been Arline Tufano and Dena Karzen, as primary beneficiaries in equal shares, and Decedent's Estate as contingent beneficiary.

51. Dena Karzen and Arline Tufano passed away in 2017 and 2022, respectively, predeceasing Decedent. Thus, but for NYU's failure to inform Decedent of the aforementioned discrepancy, Decedent's Estate would have been the sole beneficiary of all retirement contracts held by Decedent at TIAA-CREF at the time of his passing in 2024.

C. **NYU's Failure to Timely Respond to Plaintiff's Claim**

52. On or about October 31, 2024, Plaintiff, through counsel, notified NYU of the Estate's intent to contest the validity of Decedent's beneficiary designations under the following TIAA contracts held by Decedent at the time of his death (i.e., the Disputed Contracts):

| A6132193/ P6132190 | TIAA-CREF Retirement Annuity (RA) plan issued in 1974 |
|---|---|
| L30977S6/ M30977S4 | Continuation of TIAA-CREF RA plan A6132193/ P6132190, post-Vanguard/TIAA consolidation |
| F1776563/ H1776569 | TIAA-CREF Retirement Choice (RC) plan issued in 2024 |

9

A true and accurate copy of this October 31, 2024 correspondence is annexed hereto as **Exhibit "C"**.

53. By this correspondence, Plaintiff also requested the following documents for the Disputed Contracts:

   a. The underlying Plan Document, inclusive of disclosure documents and any amendments thereto;

   b. The Summary Plan Description;

   c. Any applicable notices or disclosures;

   d. Any claims procedure forms; and

   e. Any and all correspondence between New York University and Mr. Greenberg regarding his beneficiary designation(s) from 1974 until the date of his death on July 12, 2024.

54. Pursuant to 29 U.S.C. § 1024(b)(4), Plaintiff, as representative for Decedent's Estate, is entitled to the documents requested in its October 31, 2024 correspondence to NYU and enumerated in paragraph 53.

55. On or about November 27, 2024, Mark Petti (hereinafter, "Petti"), Director of Retirement Plans & Global Benefits, New York University, responded to Plaintiff's October 31, 2024 correspondence on behalf of NYU, providing the following documents, a compilation of which is annexed hereto as **Exhibit "D"**:

   a. Summary Plan Description
      i. Including APPENDIX C: Claims And Appeals Procedures

   b. Summary Annual Report

   c. Safe Harbor and QDIA notices

   d. Annual Investment Notice

   e. 2020 Restated Plan Document with subsequent Amendments

        f.        Two correspondences between New York University and Mr. Greenberg, related to the NYU retirement Plan, regarding his beneficiary designation(s) from 1974 until the date of his death on July 12, 2024.

56. The "two correspondences between New York University and Mr. Greenberg" referenced by NYU in its October 31, 2024 were merely the account opening forms for Decedent's Original Retirement Annuity Contract and Decedent's F5 Contract, issued in 1974 and 1996, respectively. *See* **Exhibit "D"** at 105-108.

57. In an email to Petti dated December 2, 2024, Plaintiff, through counsel, inquired as to the existence of any further correspondence between NYU and Decedent. In response, Petti proposed a call to discuss same.

58. On December 12, 2024, Plaintiff's counsel conferred with Petti and legal counsel for NYU. During this call, Plaintiff's counsel repeatedly requested any and all correspondence between NYU and Decedent. In response, Petti and counsel refused to acknowledge the existence, or lack thereof, of any such correspondence, and as of the date of this filing, have not produced any further correspondence to Plaintiff.

59. On December 20, 2024, Plaintiff, through counsel, submitted its claim to NYU for all benefits payable under the Disputed Contracts, as well as any other retirement contracts held by Decedent at the time of his death (hereinafter "Plaintiff's Claim"). A true and accurate copy of Plaintiff's Claim is annexed hereto as **Exhibit "E"**.

60. On April 1, 2025, NYU responded to Plaintiff's Claim, stating that pursuant to "Appendix C [of] the claims and appeals procedures for the New York University Retirement Plan for Members of the Faculty, Professional Research Staff, and Administration, NYU has determined additional time is needed to process the Claim…[and] determine the status of entities

listed as beneficiaries on the account." A true and accurate copy of NYU's April 1, 2025 response to Plaintiff's Claim is annexed hereto as **Exhibit "F"**.

61. Pursuant to Appendix C (hereinafter, "Claims and Appeals Procedures") of the Summary Plan Description, "[a] Claim normally shall be processed and determined by the Claims Manager within a reasonable time (but no longer than 90 days) following actual receipt of the Claim. However, if the Claims Manager determines that additional time is needed to process the Claim ***and so notifies the Claimant in writing within the initial 90-day period***, the Claims Manager may extend the determination period for up to an additional 90 days." *See* **Exhibit "D"** at 29 (emphasis added).

62. NYU's April 1, 2025, response falls outside of the initial 90-day period and thus constitutes its failure to follow claims procedures consistent with its own Summary Plan Description as well as 29 C.F.R. § 2560.503-1(f).

63. Additionally, NYU's April 1, 2025, response fails to identify the "special circumstances" required to invoke a 90-day extension of time for processing Plaintiff's Claim, as provided under 29 C.F.R. § 2560.503-1(f). The regulation mandates that any such extension be accompanied by a written explanation of the special circumstances necessitating the delay and the date by which a final decision will be made. NYU's response, however, merely asserts the need for additional time without identifying any extraordinary or unforeseeable conditions that would justify an extension under the regulation. *See* **Exhibit "F"**.

64. NYU's proffered explanation for a 90-day extension of time for processing Plaintiff's Claim—that additional time is needed "to determine the status of entities listed as beneficiaries on the account"—does not constitute a "special circumstance" within the meaning of 29 C.F.R. § 2560.503-1(f). Routine administrative tasks such as verifying beneficiary information

are inherent in claim processing and do not satisfy the heightened threshold for an extension. Courts within the Second Circuit have made clear that an extension must be supported by exceptional or unforeseeable conditions, not by ordinary administrative delay. *See Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 57 (2d Cir. 2016) (emphasizing that strict compliance with ERISA's claims procedures is required and that plan administrators may not deviate from regulatory timeframes without justification); *Eastman v. Union Pacific Corp.*, No. 13 Civ. 912 (JCH), 2014 WL 1317631, at *7 (D. Conn. Mar. 31, 2014) (holding that a plan's failure to comply with procedural requirements, including improper extensions, constitutes a violation of ERISA).

65. NYU's failure to articulate a valid basis for extending the decision deadline therefore renders its extension improper and noncompliant with governing law.

66. In accordance with the foregoing and pursuant to 29 C.F.R. § 2560.503-1(l), Plaintiff has "exhausted the administrative remedies available under the plan and [is] entitled to pursue any available remedies under § 502 of the [Employee Retirement Income Security Act of 1974, 29 U.S.C. 1132] on the basis that [NYU] has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

67. It is well-established in this Circuit that an employee benefit plan's "failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court." *Halo*, 819 F.3d at 45 (2d Cir. 2016).

68. NYU's failure to timely respond to Plaintiff's Claim affords Plaintiff *de novo* review in this Court.

### D. NYU's Breaches of Fiduciary Duty

69. Pursuant to 29 U.S.C. § 1002 (21)(A), a person who "(i) asserts discretionary authority or control over the management of the plan, (ii) authority of control over plan assets, or (iii) any discretionary authority or control over plan administration is a fiduciary [under ERISA]."

70. As employer and sponsor of the Faculty Plan, NYU has asserted discretionary authority and control over the management and administration of the Faculty Plan and its assets, rendering it a fiduciary for purposes of ERISA.

71. ERISA imposes a strict fiduciary duty of prudence upon NYU as a fiduciary of the Faculty Plan. The fiduciary duty of prudence "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 134 S. Ct. 2459 (2014) (citation omitted). This means that ERISA fiduciaries must discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).

72. In response to Plaintiff's request for "any and all correspondence between New York University and Mr. Greenberg regarding his beneficiary designation(s) from 1974 until the date of his death on July 12, 2024", NYU failed to produce even a single document evidencing correspondence.

73. Upon this information, it is clear that NYU failed to communicate with Decedent at all over the course of fifty years and thus, failed to fulfill its obligations of due diligence in administering Decedent's TIAA Accounts.

74. NYU failed to take even minimal steps towards fulfilling its ERISA-prescribed fiduciary duty of prudence owed to Decedent.

75. NYU's failure to communicate with Decedent regarding the beneficiary designations he made in 1974 on a retirement annuity contract worth approximately $4,765,123.00 constitutes a *prima facie* breach of its fiduciary duty of prudence.

## COUNT I
### Claim for Declaratory and Equitable Relief
### (ERISA § 502(a)(3))

76. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

77. Plaintiff brings this Count I pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides that "[a] civil action may be brought . . . by a . . . participant [or] beneficiary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

78. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks a declaration from the Court providing equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including:

    a. A declaration that NYU has breached its fiduciary duties to the Estate under the terms of the Faculty Plan;

    b. A declaration that the DSA is neither a legal successor in interest to nor a proper beneficiary of the New American Movement;

    c. A declaration that the DSA is not a proper beneficiary of the Disputed Contracts;

    d. Surcharge; and

    e. The imposition of a constructive trust on the proceeds of the Disputed Contracts.

79. Plaintiff, pursuant to ERISA § 502(a)(3), 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, and in accordance with the principles of equity, seeks a declaratory judgment that:

    a. As a result of NYU's breach of its fiduciary duties under the Faculty Plan, Plaintiff has suffered damages in an amount equal to the proceeds that otherwise would have been received under the Disputed Contracts;

    b. As a result of NYU's breach of its fiduciary duties under the Faculty Plan, it has retained funds that it would have otherwise been legally required to pay to Plaintiff and has wrongfully profited as a result; and

    c. As a result of NYU's breach of its fiduciary duties under the Faculty Plan, Plaintiff has suffered actual harm, injury and loss, which cannot be remedied absent equitable or remedial relief, as the Court may deem necessary.

80. Plaintiff, pursuant to ERISA § 502(a)(3), 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, and in accordance with New York law and the principles of equity, seeks a declaratory judgment that—because at the time of Decedent's death, all beneficiaries designated on the Disputed Contracts had lapsed—the proceeds of the Disputed Contracts must escheat to the Estate.

81. Plaintiff, pursuant to ERISA § 502(a)(3) and in accordance with the principles of equity, requests that NYU be compelled to disgorge or be surcharged for the value of the Disputed Contracts, which is has wrongfully retained.

82. Plaintiff, pursuant to ERISA § 502(a)(3) and in accordance with the principles of equity, seeks the imposition of a constructive trust on the proceeds of the Disputed Contracts. The imposition of a constructive trust is necessary to prevent unjust enrichment and to ensure that the proceeds of the Disputed Contracts are preserved and restored to the Plaintiff in accordance with Decedent's intent and the requirements of ERISA.

## COUNT II
### Claim for Benefits and to Clarify and Enforce Rights
### (ERISA § 502(a)(1)(B))

83. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

84. Plaintiff brings this Count II pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which allows a participant or beneficiary to bring claims to recover benefits due under a plan, to enforce rights under the terms of the plan, or to "clarify his rights to future benefits under the terms of the plan."

85. As a Faculty Plan participant, NYU owed fiduciary duties to Decedent; thereby, Plaintiff brings this claim on Decedent's behalf.

86. As a result of NYU's breach of its fiduciary duty owed to Decedent, the beneficiaries designated on the Disputed Contracts did not align with his intended beneficiary designation.

87. Decedent is entitled to have his true intentions honored as they relate to the intended beneficiaries of the Disputed Contracts.

## COUNT III
### Claim for Breach of Fiduciary Duty
### (ERISA §§ 404, 409, and 502(a)(2))

88. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

89. Plaintiff brings this Count III pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which allows a participant or beneficiary to bring claims for appropriate relief for violation of the fiduciary duties imposed by ERISA in ERISA §§ 404 and 409, 29 U.S.C. §§ 1104, 1109.

90. Pursuant to ERISA § 409, 29 U.S.C. § 1109, "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable" to make good any such losses.

91. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

92. NYU failed to engage in a prudent process for periodically confirming that the beneficiary information on its Faculty Plan participants' accounts was up-to-date and reflective of their true intentions.

93. By its actions, NYU has failed to uphold its duty to honor Decedent's rights and interests as reflected in his beneficiary designations under the Disputed Contracts, a duty which is also owed to the Estate.

94. NYU's actions have violated the obligations imposed on them by ERISA § 404, 29 U.S.C. § 1104. NYU's violative actions include:

    a. Its failure to periodically communicate with Decedent to ensure the accuracy of the beneficiary designations for the Disputed Contracts; and

    b. Its failure to provide the Estate with full disclosure of Decedent's account information and documentation.

95. As a result of NYU's breach of its fiduciary duty, Plaintiff has suffered in the amount of the proceeds of the Disputed Contracts, lost earnings and interest on that amount, and has incurred attorneys' fees and court costs associated with bringing this action.

## COUNT IV
### In the Alternative, for Equitable Relief at Common Law

96. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

97. Plaintiff brings this Count IV pursuant to common law principles of equity.

98. Should the Court conclude that the Faculty Plan is not subject to ERISA, then, in the alternative, NYU, by its conduct described above, must be estopped from denying payment of the amounts due to Plaintiff under the Faculty Plan and have waived any grounds, contractual or otherwise, to deny payment.

99. NYU is liable for equitable or legal relief and must be ordered to pay all sums that should have been paid to Plaintiff or the Estate, in addition to all lost interest and earnings resulting from NYU's failure to timely do so.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of the Faculty Plan and all similarly situated Faculty Plan participants and beneficiaries, respectfully requests that the Court:

    a. Find and declare that NYU has breached its fiduciary duties to the Estate under the terms of the Faculty Plan;

    b. Find and declare that the DSA is neither a legal successor in interest to nor a proper beneficiary of the New American Movement;

    c. Find and declare that the DSA is not a proper beneficiary of the Disputed Contracts;

    d. Find and declare that the proceeds of the Disputed Contracts escheat to the Estate;

    e. Impose a surcharge upon NYU for the value of the Disputed Contracts;

    f. Impose a constructive trust on the proceeds of the Disputed Contracts;

g. Find and declare the fifty-year-old beneficiary designations under the Disputed Contracts to be stale designations;

h. Determine that the Disputed Contracts should adopt the beneficiary designations reflected in Decedent's most recently issued retirement annuity contract bearing account number F543FTV4/H543FTV0 as indicative of Decedent's true intention;

i. Conform the beneficiary designations under the Disputed Contracts to the beneficiary designation under the F5 Contract;

j. Award to the Plaintiff its attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

k. Order the payment of interest to the extent it is allowed by law; and

l. Grant other equitable or remedial relief as the Court deems just and proper.

Dated: April 11, 2025
Garden City, New York

Respectfully submitted,

**SCHWARTZ, CONROY & HACK, PC**

By: */s/ Michail Z. Hack*
Michail Z. Hack, Esq. (SDNY Bar No. 3066149)
Sarah A. McMahon, Esq. (SDNY Bar No. 5973953)
*Attorneys for Plaintiff Martin Hecht as Administrator of the Estate of David F. Greenberg*
666 Old Country Road, 9th Floor
Garden City, New York 11530
(516) 745-1122
mzh@schlawpc.com
sam@schlawpc.com