**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MARTIN HECHT AS ADMINISTRATOR OF THE ESTATE OF DAVID F. GREENBERG, | Case No. 1:25-cv-03042-PAE |
| Plaintiff, | |
| v. | **ANSWER, AFFIRMATIVE DEFENSES, COUNTER-CLAIM, AND CROSS-CLAIM OF DEFENDANT DEMOCRATIC SOCIALISTS OF AMERICA, INC.** |
| NEW YORK UNIVERSITY and DEMOCRATIC SOCIALISTS OF AMERICA, INC., | |
| Defendants. | |

## ANSWER

Defendant Democratic Socialists of America, Inc. ("DSA"), by and through the undersigned counsel, hereby answers the Complaint of Plaintiff Martin Hecht as Administrator of the Estate of David F. Greenberg, according to its numbered paragraphs, as follows:

1.       This paragraph is a statement of intention to which no response is required. To the extent a response is proper, DSA admits that Plaintiff seeks escheatment of benefits under the New York University Retirement Plan for Members of the Faculty, Professional Research Staff, and Administration ("NYU Plan") to the Estate of David F. Greenberg. Except as expressly omitted, DSA denies each and every allegation of this paragraph.

2.       This paragraph is a statement of intention to which no response is required. To the extent a response is proper, DSA admits that Mr. Hecht is the Plaintiff in this action, that New York University ("NYU") and DSA are defendants in this action, that NYU employed David F. Greenberg ("Prof. Greenberg"), that DSA is the successor to the New American Movement ("NAM"), and that DSA is the beneficiary of certain benefits payable under the NYU Plan as a

result of Prof. Greenberg's death. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

3.     Denied.

4.     This paragraph is a statement of intention to which no response is required. To the extent a response is proper, DSA admits that Mr. Hecht is the administrator of Prof. Greenberg's estate and admits that Prof. Greenberg designated NAM as contingent beneficiary pursuant to the terms of the NYU Plan. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

5.     DSA admits that Prof. Greenberg died on July 12, 2024. DSA is without information and belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

6.     DSA is without information and belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

7.     This paragraph is a statement of intention to which no response is required. To the extent a response is proper, DSA denies each and every allegation of this paragraph.

8.     DSA admits that this case arises under ERISA and that this Court has jurisdiction pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and 28 U.S.C. § 1331.

9.     DSA admits that venue is proper in this District and that it is headquartered in New York. Except as expressly omitted, DSA denies each and every allegation of this paragraph.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

14.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

15.    DSA admits that NYU is the plan sponsor and administrator of the NYU Plan. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

16.    Admitted.

17.    DSA admits that it is a nonprofit corporation and is headquartered in New York, New York. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

18.    Admitted.

19.    Admitted.

20.    DSA admits that the NYU Plan provides retirement income for certain employees of NYU and is a defined contribution pension plan. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

21.    Denied.

22.    DSA admits that NYU is the administrator and named fiduciary of the NYU Plan. DSA is without information or belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

23.    DSA admits that NYU is the administrator of the NYU Plan. DSA states that the powers and responsibilities of the administrator are set forth at Section 7.1 of the NYU Plan. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

24.    DSA admits that NYU is the administrator and named fiduciary of the NYU Plan. DSA is without information or belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

25.    Admitted.

26.    Admitted.

27.    Admitted.

28.    DSA admits that pursuant to the NYU Plan, the Teachers Insurance and Annuity Association ("TIAA") issued annuity contracts to Prof. Greenberg numbered A-613219-3, L-30977S-6, and F-177656-3, and that these contracts were in force at Prof. Greenberg's death. DSA is without information or belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

29.    DSA admits that pursuant to the NYU Plan, the Teachers Insurance and Annuity Association ("TIAA") issued annuity contracts to Prof. Greenberg numbered A-613219-3, L-30977S-6, and F-177656-3, and that these contracts were in force at Prof. Greenberg's death. DSA is without information or belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

30.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

31.    Admitted.

32.    DSA admits that Prof. Greenberg designated NAM as his contingent beneficiary under the NYU Plan and admits, on information and belief, that the primary beneficiaries predeceased him. DSA is without information or belief as to the remaining allegations of this

paragraph, and on that basis denies each and every such allegation.

33.    DSA admits that the cited source states that NAM "was established in 1971 by veterans of the New Left movement." DSA admits that NAM was a political organization. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

34.    DSA admits that in 1982, NAM merged with the Democratic Socialist Organizing Committee ("DSOC") to form DSA. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

35.    Denied.

36.    Denied.

37.    Denied.

38.    DSA admits, on information and belief, that Prof. Greenberg's primary beneficiaries predeceased him and admits that NAM is the contingent beneficiary. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

39.    DSA admits that Prof. Greenberg was 31 years old and residing in the United States in February 1974. DSA is without information or belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

40.    DSA admits that Prof. Greenberg designated his parents as his primary beneficiaries. DSA further admits that the facts indicate that Prof. Greenberg's designation of NAM as a beneficiary pursuant to the terms of the NYU Plan was made in furtherance of his sincerely held political beliefs, which appear to have been closely aligned with the ideological principles and objectives of NAM. Except as expressly admitted, DSA denies each and every allegation of this paragraph.

41. DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

42. DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

43. DSA denies Prof. Greenberg's beneficiary designation "no longer made sense in 1996," denies that NAM dissolved, and denies that NAM merged with DSA. DSA states that NAM merged with DSOC in 1982 to form DSA. DSA is without information or belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

44. Denied.

45. DSA is without information or belief as to Prof. Greenberg's state of mind in 1996, except that DSA states that Prof. Greenberg was a dues-paying member of DSA in 1996 and continued to be a dues-paying member of DSA until his death. DSA is without information or belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

46. DSA denies that Prof. Greenberg "update[d] his beneficiary designations under his retirement accounts in 1996." DSA is without information or belief as to the allegations of this paragraph pertaining to Prof. Greenberg's internal motivations and beliefs in 1996, and on that basis denies each and every such allegation.

47. DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

48. DSA admits that Prof. Greenberg's beneficiary designation under the A-613219-3 contract applied to the L-30977S-6 and F-177656-3 contracts. DSA is without information or

belief as to the remaining allegations of this paragraph, and on that basis denies each and every such allegation.

49.    Denied.

50.    Denied.

51.    DSA is without information or belief as to the dates of death of the individuals named in this paragraph, and on that basis denies those allegations. DSA denies each and every remaining allegation of this paragraph.

52.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

53.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

54.    Denied.

55.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

56.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

57.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

58.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

59.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

60.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

61.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

62.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

63.    DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

64.    This paragraph constitutes legal conclusions that require no response. To the extent a response is required, DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

65.    This paragraph constitutes legal conclusions that require no response. To the extent a response is required, DSA denies each and every such allegation.

66.    This paragraph constitutes legal conclusions that require no response. To the extent a response is required, DSA denies each and every such allegation.

67.    This paragraph constitutes legal conclusions that require no response.

68.    This paragraph constitutes a legal conclusion that requires no response. To the extent a response is required, DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

69.    This paragraph constitutes a legal conclusion that requires no response. To the extent a response is required, DSA admits that ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), describes the circumstances under which a person is a fiduciary with respect to a

plan, but denies that the quoted language appears in ERISA.

70.     This paragraph constitutes a legal conclusion that requires no response. To the extent a response is required, DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

71.     This paragraph constitutes a legal conclusion that requires no response.

72.     DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

73.     DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

74.     DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

75.     This paragraph constitutes a legal conclusion that requires no response. To the extent a response is required, DSA is without information or belief as to the allegations of this paragraph, and on that basis denies each and every such allegation.

76.     DSA incorporates and re-alleges its responses to paragraphs 1 through 75 as though fully set forth herein.

77.     This paragraph constitutes a legal conclusion that requires no response. To the extent a response is required, DSA admits that ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), contains the quoted language, but denies that section 502(a)(3) authorizes any cause of action against DSA.

78.     This paragraph constitutes a statement of intention that requires no response. To the extent a response is required, DSA denies that Plaintiff is entitled to any relief against DSA.

79.     This paragraph constitutes a statement of intention that requires no response. To the extent a response is required, DSA denies that Plaintiff is entitled to any relief against DSA.

80.     DSA denies that at the time of Prof. Greenberg's death, all designated beneficiaries "had lapsed." DSA denies that ERISA or the Federal Rules of Civil Procedure permits escheatment of employee benefit plan assets, denies that the benefits payable on account of Prof. Greenberg's death are subject to escheatment under New York law, and denies that New York law authorizes escheatment to any entity other than New York State. DSA denies each and every remaining allegation of this paragraph.

81.     This paragraph is a statement of intention that requires no response. To the extent a response is required, DSA denies each and every allegation of this paragraph.

82.     This paragraph is a statement of intention that requires no response. To the extent a response is required, DSA denies each and every allegation of this paragraph.

83.     DSA incorporates and re-alleges its responses to paragraphs 1 through 82 as though fully set forth herein.

84.     This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA admits that ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes the cause of action described, but denies that Plaintiff is a participant or beneficiary entitled to bring the cause of action. DSA denies each and every remaining allegation of this paragraph.

85.     This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA denies each and every allegation of this paragraph.

86.     Denied.

87.     This paragraph constitutes a legal conclusion that requires no response. To the extent a response is required, DSA denies that the NYU Plan or ERISA permits inquiries into a participant's intent beyond what his designation states, *see Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009), and further states that in any event the evidence strongly supports an inference that Prof. Greenberg's designation reflects his intent as to the beneficiary of the A-613219-3, L-30977S7-6, and F-177656-3 contracts.

88.     DSA incorporates and re-alleges its responses to paragraphs 1 through 87 as though fully set forth herein.

89.     This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA admits that ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes the cause of action described, but denies that Plaintiff is a participant or beneficiary entitled to bring the cause of action. DSA denies each and every remaining allegation of this paragraph.

90.     This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA admits that ERISA section 409, 29 U.S.C. § 1109, contains the quoted language, but denies that Plaintiff is a participant or beneficiary entitled to bring a cause of action for breach of fiduciary duty. DSA denies each and every remaining allegation of this paragraph.

91.     This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA admits that ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), contains the quoted language, but denies that Plaintiff is a participant or beneficiary entitled to bring a cause of action for breach of fiduciary duty or to whom a fiduciary duty is owed. DSA denies each and every remaining allegation of this paragraph.

92.    Denied.

93.    Denied.

94.    This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA denies each and every allegation of this paragraph.

95.    Denied.

96.    DSA incorporates and re-alleges its responses to paragraphs 1 through 95 as though fully set forth herein.

97.    This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA denies each and every allegation of this paragraph.

98.    This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA denies each and every allegation of this paragraph.

99.    This paragraph is a legal conclusion that requires no response. To the extent a response is required, DSA denies each and every allegation of this paragraph.

DSA denies that Plaintiff is entitled to any relief.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### Lack of Statutory Standing

Plaintiff is not a participant in or beneficiary of the NYU Plan, nor is he a fiduciary of the NYU Plan, nor is he the Secretary of Labor. Accordingly, Plaintiff lacks statutory standing to bring any claim under ERISA's civil enforcement provision, 29 U.S.C. § 1132, and in particular he lacks statutory standing to bring Counts I, II, and III of his Complaint.

//

//

**SECOND AFFIRMATIVE DEFENSE**
**Preemption of State Common Law**

To the extent that Count IV of the Complaint seeks relief under state common law, it relates to an employee benefit plan and is therefore expressly preempted by ERISA, 29 U.S.C. § 514, and preempted as conflicting with the exclusive remedies provided by ERISA section 502, 29 U.S.C. § 1132.

**THIRD AFFIRMATIVE DEFENSE**
**Exclusive Remedy**

To the extent that Count IV of the Complaint seeks relief under federal common law, ERISA's civil enforcement provision provides the exclusive remedy for claims relating to an employee benefit plan. 29 U.S.C. § 1132.

**FOURTH AFFIRMATIVE DEFENSE**
**Preemption of State Escheatment Law**

New York's law of escheatment is expressly preempted by ERISA, 29 U.S.C. § 514, and preempted as conflicting with the exclusive remedies provided by ERISA section 502, 29 U.S.C. § 1132.

**FIFTH AFFIRMATIVE DEFENSE**
**Plan Terms Control**

An ERISA plan must be administered strictly in accordance with its written terms. 29 U.S.C. § 1104(a)(1)(D). Here, *inter alia*, the NYU Plan terms mandate that benefits payable due to the death of a participant be paid only to that participant's designated beneficiary; contain no provision voiding any beneficiary designation due to the passage of time or allowing the administrator to determine that a designation is "stale"; and contain no provision for escheatment of plan benefits.

**SIXTH AFFIRMATIVE DEFENSE**
**Failure to State a Claim for Breach of Fiduciary Duty**

The Complaint's Counts I and III allege breach of fiduciary duty, but Plaintiff alleges no facts showing that DSA is a fiduciary of the NYU Plan.

## COUNTER-CLAIM AND CROSS-CLAIM

COMES NOW Counter-Claimant and Cross-Claimant Democratic Socialists of America, Inc. ("DSA"), and for its Counter-Claim against Counter-Defendant Martin Hecht as Administrator of the Estate of David F. Greenberg and its Cross-Claim against Cross-Defendant New York University ("NYU") states as follows:

### JURISDICTION

1.    DSA brings its counter-claim and cross-claim pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This court has subject matter jurisdiction over DSA's counter-claim and cross-claim pursuant to ERISA section 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

### VENUE

2.    Pursuant to ERISA section 502(e), 29 U.S.C. § 1132(e), venue lies in the Southern District of New York with respect to DSA's counter-claim and cross-claim because the New York University Retirement Plan for Members of the Faculty, Professional Research Staff, and Administration ("NYU Plan") is administered in this District and the NYU Plan may be found in this District.

### FACTS

### The Parties and the Plan

3.    Cross-Claimant and Counter-Claimant DSA is a Washington, D.C. corporation

with its headquarters in New York, New York.

4.    Incorporated in April 1982, DSA is an IRC § 501(c)(4) non-profit social welfare organization whose goals and purposes are to (1) work toward creating a humane social order based on popular control of resources and production, economic planning, equitable distribution, feminism, racial equality, and non-oppressive relationships; (2) create a local and national organizational framework for the achievement of these goals; (3) conduct educational and informational seminars on a local and national scale on the goals of DSA and methods of achieving them; (4) build a majority movement that will make democratic socialism a reality in America; and (5) support projects and issues that further betterment of the local and national community and at the same time move toward the goals of democratic socialism. As discussed below, DSA was formed in March 1982 from the merger of the New American Movement and the Democratic Socialists Organizing Committee.

5.    Defendant and Cross-Defendant New York University ("NYU") is the named administrator of the NYU Plan within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A).

6.    DSA is informed and believes, and based thereon alleges, that Counter-Defendant Martin Hecht is a resident of Illinois and the administrator of the estate of David F. Greenberg ("Prof. Greenberg").

7.    The NYU Plan is a defined contribution pension plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), section 3(34), 29 U.S.C. § 1002(34). The NYU Plan allows participants to select among investment vehicles including annuity contracts issued by the Teachers Insurance and Annuity Association ("TIAA").

8.      The NYU Plan authorizes participants to designate a person or entity to receive a benefit from an annuity contract on account of the death of the participant, and dictates that benefits payable on account of the death of an unmarried participant be paid only to the beneficiary designated by the participant in accordance with the terms of his annuity contract.

**Professor Greenberg and His Designated Beneficiaries**

9.      According to his NYU obituary, Prof. Greenberg was born in 1942 in Evanston, Illinois, and received his Ph.D. from the University of Chicago in 1969. After publishing several influential articles on prisons and teaching criminology for a year at another university, he was offered a position as an Assistant Professor in the Sociology Department at NYU in 1973. He taught at NYU for 49 years, retiring in 2022. The obituary notes that Prof. Greenberg's career included "many and varied contributions to Marxist and radical criminology" and that a text he edited, *Crime and Capitalism: Essays in Marxist Criminology* (1981) "was widely used in the US and elsewhere."

10.     As an Associate Professor, Prof. Greenberg became a participant in the NYU Plan and was issued a TIAA annuity contract as of October 1, 1973, with contract number A-613219-3.

11.     In February 1974, pursuant to the terms of the NYU Plan, Prof. Greenberg designated the New American Movement ("NAM") as contingent beneficiary and his parents as primary beneficiaries.

12.     In subsequent years, TIAA issued two additional annuity contracts to Prof. Greenberg under the NYU Plan, numbered L-30977S7-6 and F-177656-3. Upon issuing the L-30977S7-6 contract in June 2018, TIAA informed Prof. Greenberg, "The beneficiary designation

. . . in effect for your TIAA annuity number A61321983 as of this certificate's date of issue is now also in effect for this certificate. . . . [¶] You . . . have the right to change beneficiaries as explained in your certificate." Likewise, a statement from TIAA pertaining to the F-177656-3 contract states that Prof. Greenberg's beneficiary is "SAME AS: A6132193."

13.     NYU Plan communications routinely informed participants of the NYU Plan's beneficiary provisions and the mechanism for making, reviewing, and updating beneficiary designations. For example, the NYU Plan summary plan description, issued pursuant to ERISA sections 102 and 104, 29 U.S.C. §§ 1022 and 1024, informs participants, "You may change your beneficiary at any time," urges participants to "review your beneficiary designations periodically," and explains how to "access and manage your beneficiary designations." Likewise, a brochure issued to Prof. Greenberg by TIAA explains the function of a beneficiary designation, the right to change beneficiaries, and how to review a beneficiary designation.

14.     Prof. Greenberg died July 12, 2024, at his apartment in New York.

15.     Prof. Greenberg never married and had no children.

16.     DSA is informed and believes, and based thereon alleges, that Prof. Greenberg's parents predeceased him.

17.     DSA is informed and believes, and based thereon alleges, that Prof. Greenberg never altered his original beneficiary designation as to the A-613219-3, L-30977S7-6, and F-177656-3 contracts.

18.     Prof. Greenberg's contingent beneficiary, NAM, was an unincorporated democratic socialist organization founded in 1971. According to the Guide to the Joel Blau Collection of New American Movement Records at NYU, NAM was established "by veterans of

17

the New Left movement who wanted to move beyond the activism of the 1960s and rejected a Communist 'vanguard party' approach to organizing. NAM's overarching goal was to create a democratic socialist society, characterized by racial, sexual and economic equality." The Guide continues, "The founders wanted to form an explicitly democratic socialist and socialist feminist organization that rejected all forms of authoritarianism. . . . NAM's overarching goal was to build a mass movement for a democratic socialist society. NAM saw this movement in opposition to oppression based on race, gender, sexual orientation, and class."

**The NAM-DSOC Merger**

19.    In about 1979, NAM began a lengthy process of negotiations with another unincorporated democratic socialist organization, the Democratic Socialist Organizing Committee ("DSOC"), which ultimately led to the merger of the two organizations in 1982.

20.    The negotiations were publicized to NAM's membership through correspondence, local and national meetings, NAM's bi-monthly magazine, *Moving On*, and other communications.

21.    NAM's constitution and bylaws provided that the organization had two co-equal policy-making mechanisms: voting by delegates to its annual convention, and referenda presented to its membership.

22.    At its 1981 convention, NAM passed resolutions endorsing "the 'Points of Political Agreement' reached by the NAM and DSOC Negotiating Committees as the political basis for the unification of NAM and DSOC" and prescribing a process for merger, which included surveying its chapters on structural questions and general plans for how merger should take place, empowering its negotiating committee to negotiate a merger agreement, and

presenting the agreement to the NAM membership "in the form of a referendum to be voted up or down."

23.     In November 1981, NAM and DSOC reached a merger agreement that prescribed the method for apportioning leadership offices among NAM and DSOC; the establishment of a national board, national executive committee, and interim committees; the merger of commissions and local chapters; offices, staff, and finances; and publications and literature. The merger agreement also attached the constitution and bylaws for the merged organization.

24.     The merger agreement provided that formal merger would take place at a special merger convention to be held in Detroit in March 1982. The convention was to include formalization of the merger, election of officers and national executive committee members, and other activities.

25.     The merger agreement provided that the name of the unified organization would be "Democratic Socialists of America" and that the acronym would be "DSA."

26.     By a mailing in December 1981, NAM announced the upcoming referendum on merger to its membership.

27.     By a mailing on February 2, 1982, NAM provided its membership with the merger agreement, the proposed DSA constitution, and a ballot asking the member to check "yes" or "no" in response to the statement, "I support the unification of NAM and DSOC under the terms described in this mailing."

28.     NAM's referendum passed and the two organizations formalized the merger at their merger convention on March 20, 1982.

29.     At its first meeting following the merger convention, the new DSA national

executive committee voted to incorporate the organization.

30.     DSA filed its articles of incorporation in Washington, D.C., on April 19, 1982.

31.     Prof. Greenberg was a long-time member of DSA. DSA's electronic membership records, which begin in 1993, show that Prof. Greenberg made 29 separate contributions to DSA, on a roughly annual basis from January 1, 1993, through March 31, 2024. DSA does not have membership records prior to 1993.

<b>DSA's Communications With TIAA</b>

32.     In September 2024, after Prof. Greenberg's death, TIAA informed DSA that "New American Movement is a beneficiary on some accounts here at TIAA," and requested documentation of the merger.

33.     In October 2024, DSA submitted documents showing the merger of NAM and DSOC to form DSA, and the subsequent incorporation of DSA.

34.     Later in October 2024, TIAA informed DSA that it had received the documents and needed to know who could sign for the organization and where to mail forms to be completed.

35.     In January 2025, TIAA informed DSA that it had forwarded DSA's materials to the plan sponsor for review, and "[o]nce we have verification from the plan sponsor of whether the information provided is sufficient or if additional information will be needed, I'll let you know."

36.     DSA heard nothing further from TIAA or NYU prior to Plaintiff's filing of this lawsuit.

//

20

## COUNTER-CLAIM AGAINST PLAINTIFF HECHT
### Claim to Enforce Rights Under the Terms of the Plan
### Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

37.     DSA incorporates Paragraphs 1 through 36, above, as though fully set forth

herein.

38.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a beneficiary to

bring a civil action to enforce his, her, or its rights under the terms of a plan.

39.     The terms of the NYU Plan require that benefits payable on account of the death

of an unmarried participant be paid only to the beneficiary designated by the participant in

accordance with the terms of his annuity contract.

40.     As Prof. Greenberg's beneficiary under the A-613219-3, L-30977S-6, and F-

177656-3 contracts, DSA is entitled under the terms of the Plan to the benefits payable under

those contracts on account of Prof. Greenberg's death.

41.     Plaintiff Hecht has asserted a competing claim to these NYU Plan benefits on the

basis of escheatment or otherwise.

42.     Accordingly, DSA is entitled to an order enforcing its rights under the terms of the

NYU Plan as against Plaintiff Hecht.

## CROSS-CLAIM AGAINST DEFENDANT NYU
### Claim to Recover Benefits Due Under the Terms of the Plan
### Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

43.     DSA incorporates Paragraphs 1 through 36, above, as though fully set forth

herein.

44.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a beneficiary to

bring a civil action to recover benefits due to it under the terms of a plan.

45.     As the administrator of the NYU Plan, NYU must administer the NYU Plan strictly in accordance with its written terms. 29 U.S.C. § 1104(a)(1)(D).

46.     The terms of the NYU Plan require that benefits payable on account of the death of an unmarried participant be paid only to the beneficiary designated by the participant in accordance with the terms of his annuity contract.

47.     As Prof. Greenberg's designated beneficiary under the A-613219-3, L-30977S-6, and F-177656-3 contracts, DSA is entitled under the terms of the Plan to the benefits payable under those contracts on account of Prof. Greenberg's death.

48.     Accordingly, DSA is entitled to an order directing NYU to distribute the benefits payable on account of Prof. Greenberg's death to DSA.

**PRAYER FOR RELIEF**

**WHEREFORE,** Counter-Claimant and Cross-Claimant prays for the following relief:

**As to the Counter-Claim:**

A.      A declaration that DSA is Prof. Greenberg's beneficiary under the terms of the NYU Plan and the A-613219-3, L-30977S-6, and F-177656-3 contracts and is entitled to the benefits payable under those contracts on account of Prof. Greenberg's death;

B.      An award of attorneys' fees and costs of litigation pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

C.      Such other and further relief as the Court deems equitable and just.

**As to the Cross-Claim:**

A.      An order that NYU cause the NYU Plan to distribute to DSA the benefits payable under the A-613219-3, L-30977S-6, and F-177656-3 contracts on account of Prof. Greenberg's

22

death, pursuant to the terms of the NYU Plan;

      B.      An award of attorneys' fees and costs of litigation pursuant to ERISA § 502(g), 29

U.S.C. § 1132(g); and

      C.      Such other and further relief as the Court deems equitable and just.

                    Respectfully submitted,

Dated: June 6, 2025            RENAKER SCOTT LLP

              By:    *s/ Teresa S. Renaker*
                    Teresa S. Renaker, pro hac vice
                    *Attorneys for Democratic Socialists of America, Inc.*
                    505 Montgomery Street, Suite 1125
                    San Francisco, CA 94111
                    Telephone: (415) 653-1733
                    Facsimile: (415) 761-3933
                    teresa@renakerscott.com