**SCHWARTZ, CONROY & HACK, PC**
*Making Insurance Companies Keep Their Promises*

**VIA ECF**                                                                December 17, 2025

Judge Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: *Hecht v. NYU et al* (1:25-cv-03042-PAE)
       Request for Pre-Motion Conference on Summary Judgment

Dear Judge Engelmayer:

  This firm represents Martin Hecht as Administrator of the Estate of David F. Greenberg ("Plaintiff" or "Estate") in the above-referenced action. Pursuant to Rule 3.H. of Your Honor's Individual Motion Practices, we submit this letter in response to Defendant and Counter-Claimant Democratic Socialists of America, Inc. ("DSA")'s December 11, 2025 letter outlining its anticipated motion for summary judgment (ECF No. 35, "DSA's PMC Letter").

  The question of whether DSA is the "successor" to the New American Movement ("NAM") for purposes of Prof. Greenberg's 1975 beneficiary designation is a mixed question of law and fact. DSA has not demonstrated the absence of a genuine dispute of material fact on that issue, and its legal theory fails even if all historical facts are viewed in the light most favorable to it. In 1974, Professor David F. Greenberg ("Prof. Greenberg") designated his parents as primary beneficiaries and designated NAM as contingent beneficiary. Because his parents predeceased him, the dispositive issue, as both parties acknowledge, is whether DSA is the "successor" to NAM. For the reasons set forth below, it is not.

  DSA's analysis of governing law misconstrues the judiciary's role in developing federal common law under ERISA. Where, as here, ERISA is silent, courts do not engage in a binary preemption analysis but instead develop federal common law, borrowing from state law where appropriate. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–11 (1989) (recognizing that "courts are to develop a federal common law of rights and obligations under ERISA-regulated plans"); *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004).

  The ERISA cases DSA cites involve review of a plan administrator's determination of beneficiary entitlement, not situations in which the plan documents themselves contain an undefined term requiring resort to non-ERISA legal principles. Unlike the cases on which DSA relies, the Plan Administrator here, NYU, failed to render a timely determination. Accordingly, the Court must resolve a legal identity question left unanswered by ERISA and expressly implicated by the Plan's use of the undefined term "successor."

  In developing a body of federal common law under ERISA, courts in this Circuit have consistently looked to state-law principles to fill statutory gaps, particularly where three conditions are present. <u>First</u>, where the plan itself contains a choice-of-law provision designating the state law governing the "validity and effect" of rights and duties under the contract, courts give effect to that provision as part of the plan documents. *See Barnes v. Am. Int'l Life Assurance Co.*, 681 F. Supp. 2d 513, 519–20 (S.D.N.Y. Feb. 4, 2010) (applying plan's New York choice-of-law clause and holding that courts may borrow consistent state law to interpret ERISA contracts where ERISA is silent). <u>Second</u>, courts borrow from state law where the issue concerns matters "in a field which the States have traditionally occupied," such as the existence, dissolution, merger, or continuity of legal entities. *See VFS Fin., Inc. v. Elias-Savion-Fox LLC*, 73 F. Supp. 3d 329, 342 (S.D.N.Y. Dec.

SCHWARTZ, CONROY & HACK, PC
Making Insurance Companies Keep Their Promises

1, 2014). Significantly, Defendant New York University ("NYU"), acting as Plan Administrator, requested from DSA a certificate of merger, reflecting its understanding that any showing of successor status must satisfy New York's statutory framework for legal succession. Third, where the relevant state law is one of general applicability and bears only a "tenuous, remote, or peripheral" connection to ERISA plans, courts do not treat it as preempted but instead apply it consistently with ERISA's objectives. *Hattem v. Schwarzenegger*, 449 F.3d 423, 429 (2d Cir. 2006) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995)); *see Egelhoff v. Egelhoff*, 532 U.S. 141, 147–48 (2001).

Because ERISA is silent on what constitutes an organizational "successor," and because the Plan expressly designates New York law to govern the rights and duties arising under the Contract, New York's generally applicable rules governing entity identity and legal succession properly supply the governing principles here.

Although Plaintiff and DSA agree that "[t]he Plan is governed by ERISA" and that under ERISA "a plan participant's written beneficiary designation controls the disposition of benefits," that principle does not resolve the present dispute. DSA is not the named beneficiary under the Plan, nor does it contend that it is. Rather, DSA seeks payment on the theory that it is the "successor" to the entity expressly named as contingent beneficiary, NAM. The question, therefore, is not whether the Plan documents control, but whether DSA has established, as a matter of law, that it stands in NAM's legal shoes.

DSA argues that interpreting the term "successor" requires resort to the term's "ordinary and popular sense," invoking selective dictionary definitions to assert that any organization that merely "followed" NAM would qualify. DSA PMC Letter (citing *Critchlow*, 378 F.3d at 256). Dictionary definitions, like state law, may inform the development of federal common law under ERISA, but they must be applied in full and in context. DSA cites Black's Law Dictionary's opening language defining "successor" as "[o]ne that succeeds or follows; one who takes the place that another has left, and sustains the like part or character; one who takes the place of another by succession," but omits the portion explaining that, "with reference to corporations," the term "generally means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of first corporation." Black's Law Dictionary, *Successor* (6th ed. 1990) (emphasis added). Related definitions reinforce this focus on legal continuity rather than informal succession. *See* Black's Law Dictionary, *Succession* (10th ed. 2015) ("[t]he continuation of a corporation's legal status despite changes in ownership or management"); Black's Law Dictionary, *Successor in interest* (10th ed. 2015) ("[i]n case of corporations, the term ordinarily indicates statutory succession"); Black's Law Dictionary, *Statutory successor* (10th ed. 2015) (defining the term as "the person to whom all corporate assets pass upon a corporation's dissolution according to the statute of the state of incorporation applicable at the time of dissolution," citing Restatement (Second) of Conflicts of Law § 388 cmt. a (1971)).

These definitions confirm three propositions, each dispositive here. First, succession presupposes both a legally cognizable predecessor and successor. Second, corporate succession occurs through formal legal mechanisms, not by informal resolution, continuity of ideology, or self-description. Third, a corporation's legal status as a continuation of its predecessor is determined by reference to state law. Applied here, each principle forecloses DSA's claim because NAM was an unincorporated association incapable of statutory succession, no legally recognized

mechanism transferred NAM's rights or obligations to DSA, and New York law provides no basis to treat DSA as the continuation of NAM's legal identity.

DSA contends that the Court need look only to the Plan's instruction that benefits be paid to the participant's designated beneficiary, asserting that Prof. Greenberg designated "NAM or any successor of NAM." DSA PMC Letter (citing *Egelhoff*, 532 U.S. at 150). But unlike the Estate, DSA's name appears nowhere in the Plan documents, the Enrollment Form, or the Plan Contract. The issue is therefore not whether the Plan documents control, but whether DSA can prove that it is the legal successor to the named beneficiary, NAM.

DSA further argues that ERISA preempts any state law that would "bind ERISA plan administrators to a particular choice of rules for determining beneficiary status," again relying on *Egelhoff*. That reliance is misplaced. *Egelhoff* involved a state statute that required administrators to disregard plan documents and automatically revoke spousal beneficiary designations upon divorce, directly interfering with a core ERISA function. The Court expressly distinguished such statutes from generally applicable state laws regulating matters "where ERISA has nothing to say." 532 U.S. at 147–48. The state-law principles at issue here fall squarely within that latter category. Moreover, borrowing New York's objective statutory rules governing merger and succession promotes ERISA's core objective of administrative certainty by avoiding subjective inquiries into organizational history or ideology.

Neither *Kennedy* nor *Critchlow* forecloses this analysis. *Kennedy* held only that plan administrators may not rely on extrinsic waivers or state-law doctrines to override a written beneficiary designation; it did not address how courts should interpret an undefined term within the designation itself. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 301 (2009). *Critchlow* confirms that courts may develop federal common law by borrowing state-law principles so long as the resulting rule accords with ERISA's policies. 378 F.3d at 256. Applying New York law here does not alter the beneficiary designation but supplies the objective legal framework necessary to determine whether DSA is, in fact, NAM's "successor."

Finally, DSA's reliance on *Varricchio*, *Nationwide*, and *Menche* is misplaced. Each addresses whether one corporation may be held liable for another's obligations based on a de facto merger or continuation of a corporate enterprise, and each presupposes a transfer of corporate assets, liabilities, or operations between legally cognizable corporate entities. *See Nationwide Mut. Fire Ins. Co. v. Long Island Air Conditioning, Inc.*, 78 A.D.3d 801 (2d Dep't 2010) (successor liability arises only where a corporation acquires another corporation's assets or continues its business); *Menche v. CDx Diagnostics, Inc.*, 199 A.D.3d 678 (2d Dep't 2021) (same, focusing on continuity of a corporate enterprise and transfer of assets and obligations); *Varricchio v. Big Bros., Big Sisters of Am., Inc.*, 2024 N.Y. Misc. LEXIS 54505 (Sup. Ct., Nassau County, Jan. 17, 2024) (record insufficient to rule out that a later-formed corporation had continued an earlier organization's local operations). They do not support the proposition that continuity of personnel, mission, or ideology is sufficient to establish legal succession, particularly where, as here, the predecessor was an unincorporated association incapable of statutory merger or asset conveyance.[1]

For these reasons, DSA has failed to demonstrate either a factual record or a legal framework sufficient to establish successor status under the Plan, and its request to proceed by summary judgment should be denied.

---

[1] Parenthetically, Plaintiff will be filing its own pre-motion letter seeking permission to move for summary judgment based upon these New York principles.

Respectfully submitted,
**SCHWARTZ, CONROY & HACK, P.C.**

By:  *Sarah A. McMahon*
Sarah A. McMahon, Esq.
Michail Z. Hack, Esq.
Evan S. Schwartz, Esq.
*Attorneys for Plaintiff Martin Hecht as Administrator of the Estate of David F. Greenberg*