**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTIN HECHT AS ADMINISTRATOR OF THE ESTATE OF DAVID F. GREENBERG,<br><br>     Plaintiff,<br><br>v.<br><br>NEW YORK UNIVERSITY and DEMOCRATIC SOCIALISTS OF AMERICA, INC.,<br><br>     Defendants. | Case No. 1:25-cv-03042-PAE<br><br>**MEMORANDUM OF LAW IN SUPPORT OF (1) OPPOSITION OF DEFENDANT, COUNTER-CLAIMANT, AND CROSS-CLAIMANT DEMOCRATIC SOCIALISTS OF AMERICA, INC., TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) MOTION OF DEFENDANT, COUNTER-CLAIMANT, AND CROSS-CLAIMANT DEMOCRATIC SOCIALISTS OF AMERICA, INC. FOR SUMMARY JUDGMENT** |
| DEMOCRATIC SOCIALISTS OF AMERICA, INC.,<br><br>Counter-Claimant,<br><br>v.<br><br>MARTIN HECHT AS ADMINISTRATOR OF THE ESTATE OF DAVID F. GREENBERG,<br><br>Counter-Defendant. | |
| DEMOCRATIC SOCIALISTS OF AMERICA, INC.,<br><br>Cross-Claimant,<br><br>v.<br><br>NEW YORK UNIVERSITY,<br><br>Cross-Defendant. | |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.      Greenberg's Plan Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

          1.      Greenberg Earns a Plan Benefit and Designates His Plan Beneficiaries.. 2

          2.      Greenberg Leaves an Undistributed Plan Benefit; Hecht Makes a Claim.. 3

    B.      DSA Succeeds to NAM Intentionally, Seamlessly, and Immediately.. . . . . . . . . 4

    C.      Disputed Facts in Hecht's Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.      Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.      Applicable Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.      Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          2.      *De Novo* Review of ERISA Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.      DSA Is Entitled to Summary Judgment Because the Undisputed Facts Establish That Under the Plain Meaning of "Successor," DSA Is the Successor to NAM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.      If a Legal Analysis Rather Than the Plain-Language Meaning of Successor Applies, DSA Is Still Entitled to Summary Judgment. . . . . . . . . . . . . . . . . . . . . 12

          1.      The Most Appropriate Legal Definition of "Successor" Is That Under the Substantial Continuity Standard That Applies in ERISA Cases. . . . . 13

          2.      State Law Likewise Looks to Continuity to Determine Successorship.. 15

    D.      If the Plan's New York Choice-of-Law Provision Requires a State-Law Interpretation Process, DSA Is Still Entitled to Summary Judgment. . . . . . . . . . 16

    E.      Hecht's Motion for Summary Judgment Should Be Denied Because His Proposed Definitions of "Successor" Are Unreasonable. . . . . . . . . . . . . . . . . . . 17

1. Defining "Successor" by Reference to State Law Would Defeat Uniformity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

2. Hecht's Argument for Preferring Law-Intensive Analysis to Fact-Intensive Analysis Gets Plan Administration Backwards. . . . . . . . . 20

3. ERISA Strictly Prohibits Conveyances of Beneficiary Rights. . . . . . . . . 21

4. DSA Became Entitled to a Plan Benefit Upon Greenberg's Death. . . . . . 23

F. Summary Judgment Should Also Be Granted for DSA on Hecht's Claims on Procedural Grounds and Because Neither Intent Nor Staleness Is a Viable Theory Under ERISA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Anheuser-Busch Companies, Inc.*, 758 F.3d 743 (6th Cir. 2014) . . . . . . . . . . . . . . . . 10

*Aramony v. United Way of Am.*, 254 F.3d 403 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Barnes v. Amer. Intern. Life Assur. Co.*, 681 F. Supp. 2d 513 (S.D.N.Y. 2010). . . . . . . . . . . . 17

*Boggs v. Boggs*, 520 U.S. 833 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Brewer v. Protexall, Inc.*, 50 F.3d 453 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246 (2d Cir. 2004). . . . . . . . . . . . 10, 12

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*DeFelice v. Amer. Int'l Life Assur. Co.*, 112 F.3d 61 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . 21

*Doheny v. Int'l Bus. Mach. Corp.*, 714 F. Supp. 342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Doktor v. Werner Co.*, 762 F. Supp. 2d 494 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*E. Coast Ent. of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022) . . . . . . 17

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Fay v. Oxford Health Plan*, 287 F.3d 96 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . 17

*Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 17

*Ford v. Reynolds*, 316 F.3d 351 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gorman v. Consol. Edison Corp.*, 488 F.3d 586 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 18, 22

*Halo v. Yale Health Plan*, 819 F.3d 42 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Heublein, Inc. v. U.S.*, 996 F.2d 1455 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*IBEW Pac. Coast Pension Fund v. Lee*, 462 F. App'x 546 (6th Cir. 2012) . . . . . . . . . . . . . 19, 20

*Juliano v. Health Maint. Org.*, 221 F.3d 279 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588 (2d Cir. 1993) . . . . . . . . . . . . . . 21

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) . . . . . . . . . . . . 11, 25

*Krishna v. Colgate Palmolive Co.*, 7 F.3d 11 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*Local 348-S, UFCW, AFL-CIO v. Meridian Mgmt. Corp.*, 583 F.3d 65 (2d Cir. 2009). . . . . . . 13

*M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . 10, 18

*Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

*McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . 21

*Meyer v. Duluth Bldg. Trades Welf. Fund*, 299 F.3d 686 (8th Cir. 2002). . . . . . . . . . . . . . . . . 20

*Moriarty v. Svec*, 164 F.3d 323 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Motta v. Samuel Weiser, Inc.*, 598 F. Supp. 941 (D. Maine 1984) . . . . . . . . . . . . . . . . . . . . . . 12

*New York State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th
163 (2d Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pagan v. NYNEX Pen. Plan*, 52 F.3d 438 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 20

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Planters' Cotton Oil Co. of Waxahachie v. Hopkins*, 286 U.S. 332 (1932) . . . . . . . . . . . . . . . 24

*Rombach v. Plumbers Loc. Union No. 27 Pension Fund*, 2025 WL 3110791 (3d Cir. Nov. 26,
2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*RSUI Indem. Co. v. RCG Grp. (USA)*, 890 F. Supp. 2d 315 (S.D.N.Y. 2012) . . . . . . . . . . . . . 22

*Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 264 F. Supp. 3d 262 (D.D.C. 2017) . 15

*Stotter Div. of Graduate Plastics Co. v. Dist. 65, United Auto Workers*, *AFL-CIO*, 991 F.2d 997 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Tretola v. First Unum Life Ins. Co.*, No. 13 CIV. 231 PAE, 2015 WL 509288 (S.D.N.Y. Feb. 6, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Wegner v. Standard Ins. Co.*, 129 F.3d 814 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATE CASES

*1550 MP Rd. LLC v. Teamsters Loc. Union No. 700*, 2019 IL 123046, 131 N.E.3d 99 (2019) . 24

*Aetna Life Ins. Co. v. Carney*, 9 N.Y.S.2d 59 (Sup. Ct. 1939) . . . . . . . . . . . . . . . . . . . . . . . 23

*Am. Fed'n of Tech. Eng'rs, Loc. 144 v. La Jeunesse*, 63 Ill. 2d 263 (1976) . . . . . . . . . . . . . . 24

*Bingham v. Goldberg. Marchesano. Kohlman. Inc.*, 637 A.2d 81 (D.C. 1994) . . . . . . . . . . . . . 15

*Haimes v. Noble*, 202 A.2d 917 (D.C. App. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Martin v. Curran*, 303 N.Y. 276 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

*Munhall v. Daly*, 37 Ill. App. 628 (Ill. App. Ct. 1891) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Sanders v. Molla*, 985 A.2d 439 (D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Varricchio v. Big Bros., Big Sisters of Am., Inc.*, 2024 N.Y. Misc. LEXIS 54505 (Sup. Ct., Nassau Cty., Jan. 17, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ward One Democrats, Inc. v. Woodland*, 898 A.2d 356 (D.C. App. 2006) . . . . . . . . . . . . . . . 24

## FEDERAL STATUTES

26 U.S.C. § 401(a)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 U.S.C. § 401(a)(13)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 U.S.C. § 1001 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1002(8), (9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 U.S.C. § 1056(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. § 1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

29 U.S.C. § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25

29 U.S.C. § 1132(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 25

29 U.S.C. § 1144(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## FEDERAL RULES

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## FEDERAL REGULATIONS

26 C.F.R. § 1.401(a)-13(c)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## OTHER AUTHORITIES

8 Fletcher Cyc. Corp. § 4014 (2010 ed., Sept. 2025 update) . . . . . . . . . . . . . . . . . . 15

"Marriage," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/marriage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

"Spouse," *Black's Law Dictionary* (12th ed. 2024) . . . . . . . . . . . . . . . . . . . . . . . . 19

"Spouse," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/spouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

"Successor," *Black's Law Dictionary* (12th ed. 2024) . . . . . . . . . . . . . . . . . . . . 11, 12

"Successor," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/successor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**PRELIMINARY STATEMENT**

In this dispute regarding the proper recipient of a death benefit, the parties contest whether a commonplace word used in an ERISA[1] beneficiary designation should be given its plain-language meaning, as supported by ERISA case law and policy considerations, or a meaning derived from a multi-jurisdictional state-law analysis that is preempted by ERISA and inapplicable to the resolution of this case. The term is "successor," and the question is whether Democratic Socialists of America, Inc. ("DSA") is the successor to the New American Movement ("NAM"). If DSA is NAM's successor, then it is the beneficiary; if DSA is not NAM's successor, then the benefit passes to the Estate of David F. Greenberg, the deceased plan participant, represented by Plaintiff Martin Hecht. By the instant cross-motions, the parties seek summary judgment, DSA on its counter-claim, cross-claim, and the first two counts of Hecht's complaint to the extent they seek a plan benefit, and Hecht on some unspecified claim or claims.

ERISA precedent and policy strongly support DSA's position that "successor" should be given its plain and ordinary meaning. The statute supports plan interpretations that further two goals: ordinary participants' ability to understand their plans, and uniform, uncomplicated plan administration. Hecht's approach is the antithesis of these goals. He acknowledges that it "requires a multi-layered legal analysis addressing several distinct but interrelated questions of law," Dkt. 49 – an analysis ordinary participants are not equipped to perform and that would vastly complicate plan administration. DSA's approach requires only a dictionary. Thus, ERISA requires rejecting Hecht's position.

Applying the plain and ordinary meaning of "successor," the undisputed facts show that DSA took the place of NAM and continued its democratic socialist program. Accordingly, DSA

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

1

is NAM's successor under the plain meaning of that term. The Court can end its analysis there.

Should the Court elect to explore potential law-based definitions of "successor," as Hecht recommends, DSA is still entitled to summary judgment under that approach. ERISA cases determine successorship under the "substantial continuity" test of federal labor law, and state law also looks to continuity between organizations to determine successorship. Hecht's contorted analysis is inapplicable and unsupported by ERISA precedents. Because the undisputed facts demonstrate the required continuity between NAM and DSA – indeed, there is no daylight between the two – DSA is entitled to summary judgment even under Hecht's plan interpretation.

STATEMENT OF FACTS

**A.      Greenberg's Plan Benefit**

**1.      Greenberg Earns a Plan Benefit and Designates His Plan Beneficiaries.**

Greenberg joined the NYU faculty in September 1973. JSF ¶¶ 27, 28. As a faculty member, Greenberg participated in the New York University Retirement Plan for Members of the Faculty, Professional Research Staff and Administration ("Plan"), which is an ERISA-governed employee pension benefit plan. JSF ¶¶ 1, 10, 29. NYU is the Plan Administrator and TIAA is a Plan vendor. JSF ¶¶ 7, 24. In 1974, Greenberg designated his parents as his primary beneficiaries under the Plan, and designated NAM as the contingent beneficiary. JSF ¶¶ 12, 34, 36, 55; Doc. 5.[2] In 1975, Greenberg completed an amendment to the designation, stating that the contingent beneficiary was NAM "or any successor thereof." JSF ¶¶ 36, 58; Doc. 6. The "or any successor thereof" language was supplied by the Plan on the beneficiary designation form. Doc. 5. Greenberg also updated NAM's address, JSF ¶¶ 57, 58, reflecting the relocation of NAM's national office from Minneapolis to Chicago. *See* Declaration of Hollace Graff filed herewith

---

[2] An index of documents filed with the JSF is submitted herewith as Attachment 1.

("Graff Decl."), ¶¶ 8, 10. Greenberg made no further amendments or alterations to his Plan beneficiary designation. JSF ¶ 37.

Greenberg appears to have had lifelong interests aligned with NAM's and DSA's. According to his NYU obituary, though he obtained his Ph.D. in physics, he joined NYU as a professor of sociology in part due to his "growing involvement in the social and political movements of that era." JSF ¶ 28; Doc. 3. He edited a text entitled *Crime and Capitalism: Essays in Marxist Criminology* (1981). Doc. 3. DSA's membership records show that Greenberg made annual dues contributions for 1993, the year the electronic records began, through 2024. JSF ¶¶ 163-65. DSA does not have its membership records from before 1993. JSF ¶ 167.

**2.      Greenberg Leaves an Undistributed Plan Benefit; Hecht Makes a Claim.**

In 2022, at age 80, Greenberg retired and began receiving minimum distributions from the Plan. JSF ¶¶ 4, 32; *see* IRC § 401(a)(9) (required distributions). He died in 2024. JSF ¶ 4. He was unmarried, had no children, was predeceased by his parents and siblings, and died intestate. JSF ¶¶ 4, 5, 56. As of June 30, 2025, the balance in Greenberg's Plan account was $5,283,120.65. JSF ¶ 33. Pursuant to his beneficiary designation, that balance must be distributed to NAM or "any successor thereof." JSF ¶ 58; Doc. 6.[3]

Following Greenberg's death, in September 2024 TIAA notified DSA that NAM "is a beneficiary on some accounts here." JSF ¶ 169. Over the next several months, TIAA, NYU, and DSA exchanged emails discussing what materials would be needed for NYU to determine

---

[3] Greenberg also participated in a separate NYU-sponsored, ERISA-governed pension plan, the New York University Supplemental Tax Deferred Annuity Plan ("STDA Plan"). JSF ¶¶ 60, 61; Doc. 2 at NYU 297 (summary plan description listing NYU's five pension plans). In 1996, Greenberg designated his sisters as his beneficiaries under the STDA Plan. JSF ¶ 63. TIAA distributed the benefit under the STDA Plan, $1,343,631.22, to Greenberg's estate in October 2024. Declaration of Teresa S. Renaker filed herewith ("Renaker Decl."), Exh. 4.

whether DSA was NAM's successor, with TIAA's last email to DSA stating, "Once we have verification from the plan sponsor of whether the information provided is sufficient or if additional information will be needed, I'll let you know." JSF ¶¶ 170-178, 182. Meanwhile, in December 2024, Hecht's counsel submitted a claim for the Plan benefit to NYU. JSF ¶ 188. The claim included no supporting evidence or argument. JSF ¶ 189. On April 1, 2025, NYU wrote to Hecht, stating that it needed additional time "to determine the status of entities listed as beneficiaries on the account." JSF ¶ 190; Dkt. 1-6. Deeming this notice untimely and inadequate, Dkt. 1, ¶¶ 62, 65, Hecht commenced this action on April 11, 2025, emphasizing that the Court must review his claim *de novo.* Dkt. 1, ¶¶ 67-68.

**B.     DSA Succeeds to NAM Intentionally, Seamlessly, and Immediately.**

Years after Greenberg made his Plan beneficiary designation, but decades before his death, NAM joined forces with another socialist organization, the Democratic Socialist Organizing Committee ("DSOC"), to form DSA; that this merger or unification occurred is a matter of copiously documented undisputed fact. JSF ¶¶ 76, 81-152, 158-61; Docs. 15, 17-55, 58; Graff Decl., ¶¶ 11-36; Declaration of William Barclay filed herewith ("Barclay Decl."), ¶¶ 2-4, 15-27, 29. "NAM won its place in the history of the political Left by touting [philosopher Antonio] Gramsci, advocating socialist feminism, and co-founding an organization that lasted, Democratic Socialists of America." Gary Dorrien, "In the Ruins of the Old Left and the New Left: DSOC, NAM, and Cultural Left Politics," *Tikkun*, May 11, 2022 (Attachment 2).

During the 1970s, it was not lost on U.S. democratic socialists that they had two organizations with overlapping politics, but with different geographical and generational strengths. Graff Decl., ¶¶ 11-13. Merger discussions began around 1980, and concluded with the formation of DSA at a "Unity Convention" held in Detroit on March 20 and 21, 1982. JSF ¶¶ 81-

152. The formation of DSA from NAM and DSOC had the following characteristics:

*Compliance With Constitution and Bylaws.* NAM had a robust, well-defined structure, with a constitution and bylaws, JSF ¶ 68 & Doc. 16; a national leadership structure, JSF ¶ 69 & Doc. 16, §§ VI, VII, VIII (DSA_00004-06); local chapters, Doc. 16 at § III (DSA_00002-03), JSF ¶ 93, Graff Decl. ¶ 34; Barclay Decl., ¶¶ 9, 14, 16, 19; and an annual convention, JSF ¶¶ 84, 85, 95-98, 111, 134, 138, Doc. 16, § IV (DSA_00004). NAM leaders "were careful to ensure that the merger process within NAM followed NAM's constitution and bylaws." Barclay Decl., ¶ 18; JSF ¶ 83; *see* JSF ¶¶ 85, 98, 121, 138 & Docs. 28, 40; Barclay Decl., ¶¶ 19, 20.

*Member Engagement.* In addition to *Moving On*, NAM published a roughly thrice-yearly *Discussion Bulletin* containing essays and other materials submitted by NAM members. JSF ¶ 70; Graff Decl., ¶ 27. Between 1979 and 1982, both publications discussed the organizations' progress toward merger. *See* JSF ¶¶ 81, 84, 85, 86, 88, 89, 94, 98, 128. According to *Moving On*, during this period, NAM's *Bulletin* published more than sixty articles on the question of merger with DSOC. JSF ¶ 125, Doc. 18 at DSA_01886-87; *see* JSF ¶ 89, Doc. 24 at DSA_01180-1221.

*Detailed, Comprehensive Merger Agreement.* The merger agreement provides for the merger convention, a schedule of leadership meetings, the structure and finances of the new organization, initial apportionment of leadership and staff positions between NAM and DSOC, political priorities, publications, and a plan for incorporation. JSF ¶ 119, Doc. 40 (ratified agreement); *see* JSF ¶¶ 102-110, Doc. 32 (draft agreement).

*Continuity of Leadership and Staff.* The merger agreement provides for leadership and staff positions in DSA to be allocated initially between NAM and DSOC. JSF ¶¶ 108, 110, 119; Doc. 40, §§ III(A)(2)(a), (B)(2)(a), (d); *see* JSF ¶¶ 150, 151. Immediately after the merger,

DSA's full-time staff consisted of three former members from each organization. Graff Decl., ¶ 36. According to one NAM leader, "My position as a paid member of the NAM Political Committee ended at the merger convention, and my new position as DSA's paid Program Director immediately began. I did not miss a single paycheck and continued to work in the same Chicago office." Graff Decl., ¶ 32.

***Continuity of Assets and Liabilities.*** NAM and DSOC both had income from membership dues, donations, publication subscriptions and advertising, literature sales, conferences, and other events. JSF ¶ 115. This income was expected to continue and transfer to DSA along with assets such as literature on hand. Doc. 38, DSA_01922, DSA_01927. Both organizations also had debt that transferred over. JSF ¶¶ 114, 123, 158; *see* JSF ¶¶ 114, 116, 123, 161. "It was a given that debt and assets of NAM and DSOC would become debt and assets of the new organization." Barclay Decl., ¶ 23; *see* Graff Decl., ¶ 25.

***Continuity of Physical Locations.*** The DSOC national office in New York became DSA's national center, and the NAM national office became DSA's Chicago branch office. JSF ¶ 110; Doc. 32 at § II(C)(2)(a) (DSA_00060); Graff Dec., ¶¶ 20, 31; Barclay Decl., ¶ 26.

***Continuity of General Operations.*** "DSA began to function as a unified organization at the Unity Convention, immediately following the separate meetings at which NAM and DSOC dissolved." Graff Decl., ¶ 30. After the merger, *Democratic Left* became the monthly publication of DSA. JSF ¶ 131. NAM's *Discussion Bulletin* became *Socialist Forum: A Discussion Bulletin*, and former NAM members continued to submit articles. Graff Decl., ¶¶ 27, 35. In cities where both NAM and DSOC had local chapters, the chapters merged, became DSA chapters, and continued to work on local projects. *Id.*, ¶ 34. "[T]he merger was a success in terms of maintaining engagement of both former NAM and former DSOC members in DSA." *Id.*, ¶ 34.

6

***Emphasis on Continuity in Public-Facing Communications.*** NAM and DSOC agreed that "[i]n order to build upon the established political recognition of both organizations," a "transition strategy" would be employed for adopting the organization's new name. JSF ¶ 105 & Doc. 32, § I(B)(1)(b) (DSA_50); Doc. 40, § II(A)(2) (p. 2). This strategy – referring first to "DSOC/NAM, soon to be DSA," then to "DSA, formerly DSOC/NAM," and finally just to "DSA," is reflected in documents from the merger period. *See* JSF ¶¶ 117, 146-48, 159; Docs. 39, 51-54. To this day, DSA continues to celebrate its origins in NAM, including in a "History of Democratic Socialists of America 1971-2017" on its website, JSF ¶¶ 66, 168, Doc. 13, and in social media posts. JSF ¶ 162, Doc. 56.

***Dissolution of Predecessor Organizations.*** The merger agreement states that NAM and DSOC will dissolve at the unity convention. JSF ¶¶ 107, 143; Doc. 40, § I(C).[4] This occurred: reporting on the March 1982 convention, *In These Times* wrote, "The first item on the convention agenda was the dissolution of the old organizations and separate ratification of the new one. . . . NAM's finale resembled the last moments of a '60s commune, with tributes, tears and raised fists." JSF ¶ 136; Doc. 20 at DSA_02406.

**C.      Disputed Facts in Hecht's Brief**

Hecht's brief contains some assertions of fact that misstate the Joint Statement of Facts. Among these, first, Hecht asserts that the Plan is "governed by New York law," citing JSF ¶ 25. But as the JSF shows, the Plan actually states that it is governed by New York law only "to the extent not preempted by federal law." *Id.* Second, Hecht states that DSA stated in an email that it

---

[4]  The agreement also refers to a "concurrent signing of this agreement" at the convention. Doc. 40, § I(C). In its report on the merger convention, *Democratic Left* carried a photo captioned, "Jim Chapin, reputed to have been the first person to have pushed for merger, signs the merger document." Doc. 49 at DSA_01787. However, the agreement does not have a signature block, Doc. 40, and any version with signatures has been lost to time.

"could not locate any record of such a merger," citing JSF ¶ 171. But DSA actually wrote that it "cannot find an online record of the merger," *id.* – understandable given that the merger took place in 1982. As shown above, DSA has abundant non-online records of the merger. Docs. 15, 17-55, 58. Third, Hecht states that the evidence does not identify "any written conveyance of NAM's assets or rights to DSA," Dkt. 52 at 5, or a "merger instrument" or "agreement." *Id.* at 1, 25. DSA disputes this statement, because the evidence includes the draft and ratified merger agreements, plus correspondence and memoranda discussing transfer of NAM's assets and liabilities to DSA (as well as its national office, its name, and some of its leadership and staff), and DSA produced and identified all of these documents, and more, in discovery. Renaker Decl., ¶¶ 2-5; *cf.* Dkt 52 at 25.

**D.      Procedural Background**

Hecht filed this suit against NYU and DSA in April 2025. Dkt. 1. Hecht's complaint does not identify against which defendant(s) he asserts each of his four claims, nor does it say which claims he asserts support which elements of his prayer for relief. *Id.*, ¶¶ 76-99 & a-*l*. DSA counter-claimed against Hecht and cross-claimed against NYU as Plan Administrator, both pursuant to 29 U.S.C. § 1132(a)(1)(B), which authorizes a claim by a beneficiary to enforce its rights under a plan. Dkt. 21 at 20-21, ¶¶ 37-48. The counter-claim seeks a declaration that DSA is Greenberg's beneficiary and is entitled to the Plan benefit, while the cross-claim seeks an order that NYU cause the Plan to distribute the benefit to DSA. *Id.* at 21-23, ¶¶ 37-48 & A.

Discovery being closed, DSA and Hecht now move for summary judgment. DSA seeks summary judgment as to its counter-claim and cross-claim, as well as any claim or portion of a claim by Hecht that the Court construes as seeking benefits under the terms of the Plan. In short, DSA seeks summary judgment that it, not Hecht, is Greenberg's Plan beneficiary, resolving all

claims for benefits in this litigation.[5] Hecht's motion for summary judgment skips the required

first step, which is to "identify[] each claim or defense – or the part of each claim or defense – on

which summary judgment is sought." Fed. R. Civ. P. 56(a); *cf.* Dkt. 51, 52. In general, Hecht's

motion appears to be directed to his assertions that pursuant 29 U.S.C. § 1132(a)(3), which

authorizes a claim for "appropriate equitable relief" from violations of ERISA or the terms of a

plan (but not a claim for benefits), he is entitled to declarations regarding DSA's beneficiary

status under the Plan. Dkt. 1, ¶¶ 78(b), (c), 80 & pp. 19-20, ¶¶ (b), (c). In addition to these

claims' deficiencies on the merits, discussed throughout this brief, the relief sought is not

authorized by ERISA's civil enforcement provision, as discussed below at § F. Hecht's motion

does not address his assertions of entitlement to relief based on Greenberg's alleged intent and

alleged "staleness" of Greenberg's beneficiary designation. *See id.* at ¶ 87 & pp. 19-20, ¶¶ (g),

(h). As discussed below at § F, any claim based on these assertions fails on the facts and law.

**ARGUMENT**

**A.      Applicable Legal Standards**

**1.      Summary Judgment**

Rule 56(a) authorizes summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The

party seeking summary judgment has the burden to demonstrate that no genuine issue of material

fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). On cross-motions, "the court

must evaluate each party's motion on its own merits, taking care in each instance to draw all

---

[5] Based on the absence of any response by NYU to DSA's pre-motion letter, Dkt. 35, NYU does not oppose DSA's motion on the cross-claim. Nor would it have any reason to do so, as the cross-claim seeks only an order for distribution of the Plan benefit to DSA, not any relief against NYU itself.

reasonable inferences against the party whose motion is under consideration." *Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir. 1993). An ERISA claimant bears the burden of establishing entitlement to benefits. *Juliano v. Health Maint. Org.*, 221 F.3d 279, 281-88 (2d Cir. 2000).

### 2. *De Novo* Review of ERISA Claim

The parties agree that *de novo* review applies to the claims here. *See* Dkt. 1, ¶ 67 (citing *Halo v. Yale Health Plan*, 819 F.3d 42, 58 (2d Cir. 2016)). On *de novo* review, the Court "stands in the shoes of the original decisionmaker," "interprets the terms of the benefits plan," reviews the evidence, and "reaches its own conclusion" about whether the claimant has shown entitlement to benefits under the plan. *Tretola v. First Unum Life Ins. Co.*, No. 13 CIV. 231 PAE, 2015 WL 509288, at *21-*22 (S.D.N.Y. Feb. 6, 2015) (internal quotation marks omitted).

### B. DSA Is Entitled to Summary Judgment Because the Undisputed Facts Establish That Under the Plain Meaning of "Successor," DSA Is the Successor to NAM.

Undefined ERISA plan terms, like "successor" here, are interpreted according to their plain and ordinary meaning. Courts "review the Plan as a whole, giving terms their plain meanings," *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002), using "ordinary principles of contract law," *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 442 (2015), and interpreting undefined terms "in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004) (cleaned up) (interpreting "accident").[6] Thus, "we interpret and enforce unambiguous language in an ERISA plan according to its plain meaning." *Aramony v. United*

---

[6] *Accord, Rombach v. Plumbers Loc. Union No. 27 Pension Fund*, 2025 WL 3110791, at *2 (3d Cir. Nov. 6, 2025) ("trade or craft"); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) ("overtime" and "any other extra compensation"); *Adams v. Anheuser-Busch Companies, Inc.*, 758 F.3d 743, 748 (6th Cir. 2014) ("involuntarily terminated"); *Brewer v. Protexall, Inc.*, 50 F.3d 453, 457 (7th Cir. 1995) ("comparable coverage"); *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1129 (9th Cir. 2002) ("injury").

*Way of Am.*, 254 F.3d 403, 412 (2001). This standard applies to the term "successor" in the beneficiary designation here because when a plan requires payment to a designated beneficiary, the "plan documents rule" requires hewing to the beneficiary designation as written. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 303 (2009); *see also* Dkt. 52 at 10-11 (beneficiary designation "appears within [the Plan's] contractual framework").

The plain-meaning standard serves two of ERISA's principal goals: (1) enabling plan participants to easily understand their rights and obligations with respect to their plans; and (2) promoting uncomplicated, low-risk, nationally uniform plan administration. *See, e.g.*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) ("[O]ne of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time."); *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993) (noting "strong interest in uniform, uncomplicated administration of ERISA plans"). Thus, predictability for both participants and administrators is a foundational policy of ERISA that is best served by giving terms their plain meaning.

The undisputed facts demonstrate that DSA is the successor to NAM under the plain and ordinary meaning of the word "successor." In ordinary usage, "successor" means "Someone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor." "Successor," *Black's Law Dictionary* (12th ed. 2024) (hereinafter "*Black's*"); *see Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/successor ("[O]ne that follows, *especially*: one who succeeds to a throne, title, estate, or office.")

Here, DSA followed and replaced NAM. NAM negotiated for years with a view to replacing itself, and DSOC, with DSA, a new organization that was intended to be and was a larger organization with a broader geographical and generational reach than NAM or DSOC on its own. DSA carried on NAM's functions as a democratic socialist organization; took over

11

NAM's national office and local chapters; assumed NAM's debts and assets; and, as required the merger agreement, was led and staffed in significant part by people who had led and staffed NAM. Starting in 1981, NAM and then DSA consistently held DSA out as the successor to NAM. By design, no part of NAM survived the formation of DSA; NAM disappeared entirely into DSA.[7] DSA is entitled to judgment as a matter of law that it is NAM's successor.

Likewise, were the Court to look to the plain meaning of "successor" in the context of corporations, a successor is a "corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." *Black's*, "Successor." DSA is NAM's successor under this definition too. Though NAM was not a corporation, its process of joining with DSOC was an amalgamation or consolidation of the two organizations to create DSA, involved an assumption of interests by DSA from NAM, and DSA was vested with NAM's rights and duties. Thus, DSA is entitled to judgment as a matter of law.

**C. If a Legal Analysis Rather Than the Plain-Language Meaning of Successor Applies, DSA Is Still Entitled to Summary Judgment.**

As discussed above, every consideration of ERISA law and policy favors interpreting "successor" in accordance with its plain and ordinary meaning, as directed by the Second Circuit in *Critchlow.* However, in the event that the Court elects to explore a law-based definition of the term, the result is the same: DSA is entitled to summary judgment.

**1. The Most Appropriate Legal Definition of "Successor" Is That Under the Substantial Continuity Standard That Applies in ERISA Cases.**

DSA is NAM's successor under the substantial continuity standard that courts use to

---

[7] *Cf. Motta v. Samuel Weiser, Inc.*, 598 F. Supp. 941, 951 (D. Maine 1984) (secret fraternity's "dominant figure" devised copyrights in his works to fraternity, but fraternity splintered after his death, such that court in copyright ownership dispute was unable to identify "any particular group of human beings [that] could lay exclusive claim to be" the fraternity).

determine successor status in ERISA cases. "ERISA is precisely the sort of statute – embodying the sort of federal labor relations policy goals – to which the successor liability doctrine can legitimately apply." *New York State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 179-81 (2d Cir. 2022) (substantial continuity test applies to ERISA withdrawal liability); *Stotter Div. of Graduate Plastics Co. v. Dist. 65, United Auto Workers, AFL-CIO*, 991 F.2d 997, 1001 (2d Cir. 1993) (in review of arbitrator's award of delinquent plan contributions, required "continuity clearly exists" based on new employer's operations).[8] If the Court does not apply the plain language definition, then the successorship standard applied in Second Circuit ERISA cases is the next best thing, and preferable from a national uniformity point of view to Hecht's "multi-layered legal analysis."

Substantial continuity is a "flexible" concept that must be "tailored to the circumstances at hand." *Id.* at 182 n.98; *Local 348-S, UFCW, AFL-CIO v. Meridian Mgmt. Corp.*, 583 F.3d 65, 68 (2d Cir. 2009) (successorship under ERISA is a fact-based question). In general, courts consider "whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *C&S Wholesale*, 24 F.4th at 181 (internal quotation marks omitted). Here, again, DSA is a democratic socialist organization that, by design of NAM's negotiators in the merger, carries on the same political project as NAM; again by design, following the merger it had many of the same individuals performing essentially the same work; DSA assumed NAM's debts and assets, and took over its national office; DSA

---

[8] For this reason and those discussed below in § C.2, Hecht is incorrect in asserting that "[t]he law distinguishes sharply between historical continuity and legal succession." Dkt. 52 at 26; *see id.* at 12. Under both federal and state law, historical continuity can support succession.

pursued the political project in essentially the same ways as NAM had, through publications, literature, events, and political organizing; and NAM ceased to exist when it co-founded DSA.[9]

Had NAM owed contributions to a pension plan, DSA unquestionably would have succeeded to that liability under the substantial continuity doctrine. *Compare C&S Wholesale*, 24 F.4th at 182 (no substantial continuity where predecessor continued to exist) *with Stotter*, 991 F.2d at 1001 (substantial continuity where buyer operated same plant, used same name, made same products, retained same employees, and calculated benefits based on service time with both seller and buyer).[10] The Court should decline Hecht's invitation to make new law where existing law already answers the question at hand.[11]

### 2. State Law Likewise Looks to Continuity to Determine Successorship.

DSA also prevails under state-law successorship standards, if the Court chooses to reach that question. Under state law, a successor assumes liability of its predecessor under

[9] Hecht's argument is inconsistent in that he accepts that NAM exercised the power of dissolution using only "tributes, tears, and raised fists," JSF ¶ 136, yet he simultaneously insists, without legal support, that NAM could not exercise the power of merger without making a government filing. If NAM could dissolve without informing the state, as Hecht accepts it did, then it could and did merge in the same way.

[10] Based on a footnote in his brief, Hecht can be expected to argue that standards for successor *liability* do not apply to successor *rights*. Dkt. 52 at 27 n.5. Hecht points to no authority or policy reason for this distinction. There is no reason to create separate successorship standards for liability and rights. If the continuity between NAM and DSA is sufficient for DSA to be NAM's successor for liability purposes, as it obviously is, then it is also sufficient for DSA to be NAM's successor for purposes of the Plan beneficiary designation.

[11] Hecht incorrectly points to *Doheny v. Int'l Bus. Mach. Corp.*, 714 F. Supp. 342, 371 (S.D.N.Y 2024), for the proposition that the law of the state of incorporation, rather than federal law, governs successor liability. Dkt. No. 52 at 9. *Doheny* involves a theory of alter-ego liability under the federal Age Discrimination in Employment Act ("ADEA") and California's civil rights statute. *Id.* at 371-72. As to the ADEA claim, the court noted that either state or federal law could apply, stating, "The federal interest in national uniformity in the regulation of labor relations may well be implicated here." *Id.* at 372 (cleaned up). But the court did not need to choose, because the plaintiff's theory failed under any potentially applicable law. *Id.* at 373.

circumstances including (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller; and (3) where the purchaser is merely a continuation of the seller. *Moriarty v. Svec*, 164 F.3d 323, 327 & n.4 (7th Cir. 1998) (Illinois law); *see Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 498 (E.D.N.Y. 2011) (New York law); *Bingham v. Goldberg. Marchesano. Kohlman. Inc.*, 637 A.2d 81, 89-90 (D.C. 1994) (same).[12] Courts apply these rules without regard to the form of the entities involved. *See, e.g., Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 264 F. Supp. 3d 262, 269 (D.D.C. 2017) (analyzing successorship where District purchased hospital, then transferred it to non-profit corporation); *Varricchio v. Big Bros., Big Sisters of Am., Inc.*, 2024 N.Y. Misc. LEXIS 54505 (Sup. Ct., Nassau Cty., Jan. 17, 2024) (addressing corporation's argument that it lacked continuity with unincorporated association). "It is quite generally recognized that a corporation may be held to have impliedly assumed the obligations of its predecessor,[fn] for an assumption of liability by the corporation, like any other fact, may be established by circumstantial evidence." 8 Fletcher Cyc. Corp. § 4014 (2010 ed., Sept. 2025 update).

On the undisputed facts here, DSA is the successor to NAM under all three criteria: there was an express or implied agreement of assumption, in the form of the merger agreement and correspondence, memoranda, and budget documents showing that NAM transferred its assets and liabilities to DSA; the transaction amounts to a merger or consolidation of NAM and DSOC to form DSA; and DSA is a continuation of NAM. Indeed, there is no other rational way to understand what occurred between NAM, DSOC, and DSA in 1982.

---

[12] Hecht cites *Bingham* for the proposition that D.C. law requires a "legally operative mechanism of transfer" for succession, Dkt. 52 at 12; it does not stand for that proposition. Nor does *Martin v. Curran*, 303 N.Y. 276 (1951) (unincorporated union could not be sued for defamation); or *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45 (1983) ("mere continuation" does not apply where predecessor corporation survives the transaction).

**D.** **If the Plan's New York Choice-of-Law Provision Requires a State-Law Interpretation Process, DSA Is Still Entitled to Summary Judgment.**

The Plan's choice-of-law provision does not change the outcome on the benefits claims. The Plan provides that it "will be construed, administered and enforced according to the laws of the State of New York to the extent not preempted by federal law." JSF ¶ 25.[13] Even where a plan contains a state choice-of-law provision, federal common law controls interpretation of the plan's terms. *Hankins v. Crain Auto. Holdings*, 129 F.4th 1088, 1093 (8th Cir. 2025) (because "parties may not contract to choose state law as the governing law of an ERISA benefit plan," federal common law giving words their plain and ordinary meaning applies).[14]

Although DSA believes it would be error to look to state law rather than plain meaning to interpret the Plan, the Court need not decide whether the Plan's choice of law is enforceable, because state law does not produce a different result. "Under New York law, the key to contract interpretation is the parties' reasonable expectations," which requires a plain-meaning interpretation. *Barnes v. Amer. Intern. Life Assur. Co.*, 681 F. Supp. 2d 513, 521 (S.D.N.Y. 2010) (internal quotation marks omitted); *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011) ("It is common practice for the courts of New York State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." (cleaned up)).[15]

---

[13] As part of an ERISA-avoidance strategy that can be summed up as "pay no attention to the plan behind the curtain," Hecht prefers to rely on a choice-of-law provision in a TIAA annuity contract. *E.g.*, Dkt. 52 at 10. But because that provision does not incorporate federal law, by the terms of the Plan it is superseded by the Plan's provision that does. JSF ¶¶ 17, 18.

[14] The Plan's summary plan description ("SPD") does not inform participants that state law may play a role in construing the Plan. JSF ¶ 26.

[15] Hecht's choice-of-law analysis that lands him in Illinois and D.C. is incorrect. "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *Fieger v. Pitney Bowes Credit*

Here, as in *Barnes*, a reasonable employee would undoubtedly have concluded that "successor" on the pre-printed form was to be given its ordinary, everyday meaning. Certainly, neither an employee nor a plan administrator would expect that determining a successor in accordance with the designation language would require examining "multiple bodies of law and alternative legal frameworks." Dkt. 49. New York's law of contract interpretation entitles DSA to judgment.[16]

**E. Hecht's Motion for Summary Judgment Should Be Denied Because His Proposed Definitions of "Successor" Are Unreasonable.**

Without explanation, Hecht's brief skips over plain meaning and substantial continuity, and the established ERISA jurisprudence on these doctrines, and instead goes directly to state law. His proposal for an intricate analysis of three jurisdictions' law as it existed decades in the past is the antithesis of ERISA's goals of transparency and simplicity in plan administration. Hecht acknowledges that the Plan does not define "successor," but does not explicitly propose any definition. However, one can glean from his argument two competing definitions that he promotes: (1) successor means a transferee of beneficiary rights under a "legally operative conveyance"; and (2) successor means a successor under the law of a jurisdiction selected using New York choice-of-law rules and that was in effect at the time the predecessor ceased to exist. Neither of these is a plain-meaning interpretation of "successor," neither considers the

---

*Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). The Plan selects New York law (so long as it is not preempted by federal law, which it is). New York has ample contacts with the transaction, which is the distribution of benefits under a New York-based plan pursuant to a beneficiary designation by a New York resident who earned his benefit by working in New York and where the competing claimants are a New York-headquartered corporation and a New York estate.

[16] Illinois and D.C. law are no different. *See E. Coast Ent. of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022) (under Illinois law, "[u]ndefined terms will be given their plain, ordinary, and popular meaning; i.e., they will be construed with reference to the average, ordinary, normal, reasonable person"); *Sanders v. Molla*, 985 A.2d 439, 441-42 (D.C. 2009) ("We honor the 'plain,' 'ordinary and usual meaning' of the [contract] language.").

substantial continuity doctrine, and neither is supported by any language in the beneficiary designation form or the Plan. Moreover, both suffer from additional insurmountable deficiencies, as discussed below.

### 1.   Defining "Successor" by Reference to State Law Would Defeat Uniformity.

The goal of nationally uniform plan administration requires that state law not intrude on core ERISA functions like determining entitlement to plan benefits. "Requiring ERISA administrators to master the relevant laws of States and to contend with litigation would undermine the congressional goal of minimizing the administrative and financial burdens on plan administrators – burdens ultimately borne by the beneficiaries." *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-50 (2001) (holding that state law cannot void a beneficiary designation); *Krishna*, 7 F.3d at 16 ("It would be counterproductive to compel the [plan] administrator to look beyond [beneficiary] designations into varying state laws regarding wills, trusts, and estates, or domestic relations to determine the proper beneficiaries of [plan] distributions."). Ordinary principles of contract law require that the parties' intentions control, *M&G Polymers*, 574 U.S. at 435, and that interpretations that lead to "absurd results" be avoided, *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 596 n.9 (2d Cir. 2007).

Here, it is inconceivable that in using the word "successor" on its beneficiary designation form, NYU (or its delegatee, TIAA) intended to oblige itself to analyze state law in determining beneficiary status, or that Greenberg, in completing the designation form, envisioned such a process; and interpreting an ERISA plan to require a plan administrator to conduct such an analysis would be an absurd result. Thus, ordinary principles of contract law require rejection of Hecht's proposal to define "successor" by reference to state law.

An ERISA preemption analysis produces the same outcome. To promote national

uniformity, ERISA "shall supersede any and all State laws *insofar as* they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). One of ERISA's congressional sponsors "described the reservation to Federal authority of the sole power to regulate the field of employee benefit plans as ERISA's crowning achievement." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). In particular, state law is preempted insofar as it has any "connection with" plans, including if it "interferes with nationally uniform plan administration." *Egelhoff*, 532 U.S. at 148. Thus, state laws "have typically been found to be preempted" insofar as they affect "the determination of eligibility for benefits." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003). The state corporate laws on which Hecht relies are preempted insofar as they would dictate eligibility for benefits, as Hecht contends they do.

Hecht points to "spouse" as his sole example of a plan term that courts have interpreted pursuant to state law. But this example proves DSA's point that plain meaning governs, because "spouse" inherently refers to a legal status. Indeed, in the case Hecht cites, the plan itself defined "spouse" as "'a person to whom a Participant is *legally* married.'" *IBEW Pac. Coast Pension Fund v. Lee*, 462 F. App'x 546, 548 (6th Cir. 2012) (emphasis added). But even if the plan in *Lee* had failed to define spouse, the plain meaning of the term is a legal status: "One's husband or wife by lawful marriage." *Black's*, "Spouse"; *see* "Spouse," "Marriage," *Merriam-Webster.com Dictionary* ("spouse" means "a partner in a marriage," while "marriage" means "the state of being united as spouses in a contractual relationship recognized by law"). Based on this plain meaning, a reasonable plan participant would expect that spousal status would be determined in accordance with law. In contrast, "successor" is not inherently a legal status: it is the status of someone or something that follows another and takes his, her, or its place. *See Black's*, "Successor." Just as the plain-language meaning of "spouse," as supported by dictionaries,

controls, that plain-language meaning of "successor" controls, so DSA is entitled to judgment.

> **2. Hecht's Argument for Preferring Law-Intensive Analysis to Fact-Intensive Analysis Gets Plan Administration Backwards.**

Hecht acknowledges that the method for interpreting plan terms must serve the goal of efficient plan administration. Dkt. 52 at 27-29. However, Hecht proposes that efficiency is served not by national uniformity but by avoiding fact-intensive benefit determinations in favor of law-intensive ones. *Id.* at 28. There is no authority for that proposition, and it is exactly the opposite of ERISA plan reality, for two reasons. First, requiring plan administrators to interpret the law would undermine the discretion that most plans – including the Plan here, Doc. 1 at § 7.1 – grant to their administrators in making benefit determinations, because a grant of discretion does not extend to interpretations of law. *Meyer v. Duluth Bldg. Trades Welf. Fund*, 299 F.3d 686, 689 (8th Cir. 2002); *Sellers v. Zurich Am. Ins. Co.*, 627 F.3d 627, 631 (7th Cir. 2010). Interpreting the law is a function reserved for the courts. *Penn v. Howe-Baker Eng'rs, Inc.*, 898 F.2d 1096, 1100 & n.3 (5th Cir. 1990) (no deference to plan administrator's legal interpretation because "[w]e do not give the right to interpret statutes to private citizens"). By defeating discretion, Hecht's argument for law-based interpretation ensures litigation any time an administrator interprets "successor" or a similar term in deciding benefits eligibility. Fact determinations, on the other hand, are unquestionably entitled to deferential review where the plan confers discretion. *Id.*

Second, factual investigations are the quotidian duty of a plan administrator deciding a benefits claim; legal interpretations are not. An administrator's benefit decision must be supported by "substantial evidence" developed in the plan's claim-and-appeal process, which claimants must ordinarily exhaust. *Pagan v. NYNEX Pen. Plan*, 52 F.3d 438, 441-42 (2d Cir.

1995) (substantial evidence required); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (exhaustion required to facilitate full development of administrative record); *DeFelice v. Amer. Int'l Life Assur. Co.*, 112 F.3d 61, 67 (2d Cir. 1997) (judicial review limited to administrative record absent good cause). An administrator's failure to investigate the facts can doom its decision on judicial review. *See, e.g., McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 136 (2d Cir. 2008) (benefit denial was unreasonable in part because "[a]t a minimum, further investigation [by the administrator] was required"). Therefore, Hecht's assertion that requiring an administrator to perform a multi-jurisdictional state-law analysis is preferable to requiring a factual investigation is a through-the-looking-glass moment, and plainly wrong. Determining whether the facts support DSA's successor status under a plain-language reading is well within the Plan Administrator's remit; conducting a state-law analysis is not.

### 3. ERISA Strictly Prohibits Conveyances of Beneficiary Rights.

Hecht also proposes that in order for DSA to be NAM's successor within the meaning of the Plan, NAM must have transferred its beneficiary status to DSA via a "legally operative conveyance," "legally cognizable conveyance," and similar terms. Thus, Hecht argues, in effect, that "successor" should be defined as a transferee of beneficiary rights under such a conveyance.

The insurmountable problem with this argument is that ERISA strictly prohibits any such conveyance. ERISA requires that pension plans prohibit assignment or alienation of plan benefits, 29 U.S.C. § 1056(d)(1), and conditions favorable tax treatment on that prohibition, IRC § 401(a)(13)(B). The Plan here fulfills that requirement. Doc. 2, § 8.3. An "assignment or alienation" includes "[a]ny direct or indirect arrangement . . . whereby a party acquires from a . . . beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit which . . . may become[] payable to the . . . beneficiary." 26 C.F.R. § 1.401(a)-

13(c)(1)(ii). Thus, there is no such thing as a "legally operative conveyance" of beneficiary status under an ERISA plan – the term is an oxymoron. For good measure, any attempt at such a conveyance is without effect due to ERISA preemption. *Boggs v. Boggs*, 520 U.S. 833, 850-52 (1997). A beneficiary designation can provide for substituting one beneficiary for another, as it does here, but a beneficiary cannot assign or alienate the potential right to a future benefit.

For this reason, ordinary principles of contract interpretation preclude Hecht's proposed conveyance requirement. Construing an ERISA beneficiary designation to require a conveyance that would violate ERISA and jeopardize the Plan's tax qualification is an absurd result. *See Gorman*, 488 F.3d at 596 n.9 (canons of construction preclude absurd results). Moreover, ordinary principles of contract law dictate that "an interpretation that gives a reasonable and effective meaning to all of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *RSUI Indem. Co. v. RCG Grp. (USA)*, 890 F. Supp. 2d 315, 326 (S.D.N.Y. 2012), *aff'd*, 539 F. App'x 3 (2d Cir. 2013). Hecht's proposed definition fails because it would render the term "successor" in the beneficiary designation a nullity: "transferee under a conveyance of beneficiary rights" describes an empty set. And finally, because the Plan prohibits such transfers, the transfer-based definition would cause the beneficiary designation to contradict the Plan, violating the principle that a contract must be interpreted to give meaning to all of its terms. Greenberg's Plan beneficiary is any successor of NAM by operation of the beneficiary designation, not because of any conveyance; the designation is self-executing.

For all of these reasons, Hecht's argument for analyzing successor status under state law fails. The Court should interpret plan terms in accordance with their plain meaning.

### 4. DSA Became Entitled to a Plan Benefit Upon Greenberg's Death.

The question in this case is whether DSA became entitled to – or "vested in" – a Plan

benefit upon Greenberg's death in 2024, not whether NAM would have become entitled to a benefit if Greenberg had died before 1982. While the answer to both questions is yes, the second is hypothetical and has no bearing on the outcome of these motions.

A beneficiary designation is not a vested right so long as it is revocable. *Aetna Life Ins. Co. v. Carney*, 9 N.Y.S.2d 59, 60 (Sup. Ct. 1939); *Munhall v. Daly*, 37 Ill. App. 628, 629-30 (Ill. App. Ct. 1891). Here, the Plan allowed Greenberg to change his beneficiary at any time. Doc. 2 at NYU 000287.[17] Thus, Hecht's proposal that to be effective, Greenberg's beneficiary designation must have "vested" in NAM before it became DSA would render inoperable the "successor" term of the beneficiary designation – there could never be a successor if the benefit had to vest before the succession occurred. Likewise, the argument that NAM was required to unlawfully "transfer" its "property right" in the beneficiary designation fails because the beneficiary designation was not property that NAM could transfer. The beneficiary designation transfers to a successor by its own terms, not by some external (and ERISA-prohibited) transfer. Finally, state law is preempted insofar as it provides, as Hecht suggests, that an unincorporated association cannot be a plan beneficiary, because ERISA specifies to the contrary. 29 U.S.C. § 1002(8), (9). Moreover, DSA is a corporation that can hold property and that vested in the Plan benefit when Greenberg died, so it is entitled to judgment.

Hecht also cites cases standing for the proposition that under certain circumstances, an unincorporated association cannot sue or be sued in its own name, or could not under former law. *See Am. Fed'n of Tech. Eng'rs, Loc. 144 v. La Jeunesse*, 63 Ill. 2d 263, 266 (1976)[18];

---

[17] To be sure, ERISA confers protections on beneficiaries as well as participants. *See Boggs*, 520 U.S. at 850. But those protections are not property rights.

[18] *LaJeunesse* does not stand for the propositions for which Hecht cites it; it deals with the capacity of an unincorporated union to sue in its own name for alleged violations of its

*Martin*, 303 at 280. DSA brings its claims in its own name; whether NAM could have brought the claims forty years ago is neither here nor there. Nothing in the Plan or the beneficiary designation conditions successorship on the ability of the original beneficiary to sue in its own name. Equally unavailing is the assertion that DSA did not become the beneficiary by "incorporation alone" or solely by reason of having "similar organizational purpose." Dkt. 52 at 23. It is undisputed that nearly everything associated with NAM – assets, liabilities, an office lease, leadership, members, local chapters, the right to call itself "formerly NAM" – transferred to DSA.[19]

**F.      Summary Judgment Should Also Be Granted for DSA on Hecht's Claims on Procedural Grounds and Because Neither Intent Nor Staleness Is a Viable Theory Under ERISA.**

Hecht's first and second claims also fail for procedural reasons. ERISA's civil enforcement provision, 29 U.S.C. § 1132, is an "interlocking, interrelated, and interdependent remedial scheme" that does not authorize any remedy not expressly incorporated. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). In particular, 29 U.S.C. § 1132(a)(3) is a "catchall" provision under which relief is available *only* if it is unavailable under one of the other civil enforcement subsections, including 29 U.S.C. § 1132(a)(1)(B), which authorizes claims for

---

constitution and bylaws by certain of its members. Nor does *1550 MP Rd. LLC v. Teamsters Loc. Union No. 700*, 2019 IL 123046, 131 N.E.3d 99 (2019), which addresses whether a lease of real property entered into by an unincorporated association was valid. *Id.* at 107. In *Haimes v. Noble*, 202 A.2d 917 (D.C. App. 1964), there was "no transfer of partnership assets to the corporation by either partner" and no "evidence that the corporation assumed the debts of the former partnership." *Id.* Here, evidence of both establishes that DSA is NAM's successor.

[19] *Ward One Democrats, Inc. v. Woodland*, 898 A.2d 356 (D.C. App. 2006), stands for the proposition that in a trademark dispute between an incorporated entity and a unincorporated one, incorporation alone does not confer an exclusive right to a name. *Id.* at 360. It says nothing about successorship. *Planters' Cotton Oil Co. of Waxahachie v. Hopkins*, 286 U.S. 332 (1932), essentially rejects a business owner's attempt to deduct from the income of his corporations the prior years' losses of pre-existing, but also co-existing, unincorporated entities. *Id.* at 333-34.

benefits. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Hecht's first claim for relief seeks a declaration of entitlement to benefits pursuant to 29 U.S.C. § 1132(a)(3), but that relief is available only under 29 U.S.C. § 1132(a)(1)(B). And Hecht's second claim for relief seeks benefits as a remedy for an alleged breach of fiduciary duty. Even Hecht could prove a breach, his remedy would not be a Plan benefit. Finally, Hecht cannot obtain a benefit based on his assertions about intent or "staleness." As to intent, in a benefits determination there is no room for "enquiries into nice expressions of [a participant's] intent" as to disposition of benefits. *Kennedy*, 555 U.S. at 301.[20] As to "staleness," the beneficiary designation does not contain an expiration date, Doc. 6, the Plan does not provide for expiration of a beneficiary designation, Doc. 1, and there is no law holding that a designation can become "stale."

Accordingly, summary judgment should be granted for DSA as to its counter-claim, cross-claim, and all aspects of Hecht's complaint that bear on entitlement to the Plan benefit.

### CONCLUSION

For all of the foregoing reasons, DSA's motion for summary judgment should be granted and Hecht's should be denied.

Dated: April 8, 2026

RENAKER SCOTT LLP

By: _____
Teresa S. Renaker, *pro hac vice*
*Attorneys for Democratic Socialists of America, Inc.*
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Telephone: (415) 653-1733
Facsimile: (415) 761-3933
teresa@renakerscott.com

---

[20] Moreover, Greenberg's beneficiary designation under the STDA Plan, an entirely separate plan, says nothing about his intent with regard to his benefit under the Plan.